541 So.2d 341 (1989)
Sharon Porter BURFORD, Plaintiff-Appellee,
v.
Charles Elmer BURFORD, Jr., Defendant-Appellant.
No. 20312-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
Writ Denied June 2, 1989.
*342 Keene, Auer & Antee by Kenneth R. Antee, Jr., Bossier City, for defendant-appellant.
Jack R. Gamble, Jr., Mansfield, for plaintiff-appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
In this action to partition community property, the defendant, Charles E. Burford, Jr., appeals the judgment of the trial court. The plaintiff, Sharon Porter Burford, answered the appeal. We affirm in part, reverse in part, and render.
The parties were married in 1966. During the marriage, the defendant operated a dairy farm. The plaintiff kept the books for the business for at least part of the marriage. In 1974 the defendant's father executed a cash deed conveying a 70-acre tract of land to the defendant. The deed recited a sales price of $10,000. The plaintiff and the defendant built their house on this tract. In 1977 the defendant's father executed a credit deed conveying a 130-acre tract of land to the defendant. This tract was adjacent to the first tract. The credit deed states a sales price of $39,000, with $5,000 of this amount being paid in cash. A note was given for the balance.
On October 31, 1983, the plaintiff filed a petition for legal separation. A judgment of legal separation was signed on January 19, 1984. On April 15, 1986, the plaintiff filed for a divorce. A judgment of divorce was rendered on May 27, 1986. On June 12, 1987, the plaintiff filed a petition for partition of the community property. With her petition she filed a detailed descriptive list of the assets which she contends are community property. The defendant filed an answer to the petition and a motion to traverse the plaintiff's detailed descriptive list.
In addition to the two tracts of land previously referenced, the partition proceedings put at issue significant sums of money received from the federal government under a dairy buyout program, several specific items of movable property and claims for reimbursement for separate funds allegedly spent on community obligations.
After the parties were separated, the defendant continued to operate the dairy business. Unfortunately, the business was not doing well. On March 6, 1986, both parties entered into a contract with the U.S. Department of Agriculture under a federal dairy buyout program.
Under the contract, the parties agreed to sell their dairy herd. The defendant testified that the cows were sold at public auction for $70,572.69 and that this money was used to pay certain community debts.
The most important feature of the agreement was that the parties agreed not to engage in the dairy business for five years from the date of the buyout or to use any milk production facility for that period. They were to receive the sum of $236,000 for this agreement. The contract provided that the plaintiff and the defendant were to receive 50 percent each. (Exhibit D-3) They received $188,000 in the first year, and they were to receive the balance in four equal yearly payments of $11,800. The plaintiff testified that part of the money from the buyout agreement, $38,248.24, was placed in a certificate of deposit that was to be used to pay the taxes on the funds received under the buyout agreement.
It should be noted that both the plaintiff and the defendant indicated in their testimony that they did not sell the cows to the government, but that they were sold privately. They were not refuted in this respect by a representative of the Agricultural Stabilization and Conservation Service, who also testified.
Also after the separation, the couple sold a station wagon which was community property. According to his testimony, the defendant used all of the proceeds from the sale to pay off the note on the plaintiff's new car, her separate property. He also testified that he paid the insurance and repair bills on the new car with community funds.
*343 As to the two tracts of land, both parties stated that they paid $200 a month to the defendant's father. The plaintiff testified that this money went toward the purchase price of the second tract. The defendant testified that the money was rent that he and his wife paid for dairy equipment located in a barn his father had built on the second tract a couple of years before donating the property. According to the defendant's testimony, he began making the payments just after the barn was built. While the defendant's father testified that he gave the two tracts of land to his son as an advance on his inheritance, the father also testified that he did not renounce any right to obtain the $10,000 under the cash deed and the $39,000 under the credit deed.
The trial court found that both tracts of land were community property. In support of its conclusion, the trial court noted that the deed transferring the 70-acre tract to the defendant did not state that it was to be the defendant's separate property, that the couple had executed a mortgage on the tract, and that they built the community house on it.
With regard to the second tract, the trial court found that the parties made monthly payments of $200, that these payments were used to pay off the note given for the property, and that the funds used to make these monthly payments came from community earnings.
As to the federal buyout program, the trial court found that the $188,000 initially paid under the buyout agreement was payment for the cows and that the subsequent four yearly payments were compensation for the defendant's agreement to stay out of the dairy business for five years.
The trial court implicitly held that the $188,000 lump sum payment was community property. The trial court found that the $188,000 had been used to pay community debts. The trial court also concluded that the yearly payments made by the Department of Agriculture under the dairy buyout program were the defendant's separate property. The court reasoned that in reality only the defendant was affected by the agreement not to engage in the dairy business. At the time that the couple entered into the agreement, only the defendant was actually engaged in dairy farming and thus he was the one that was barred from "engaging in his lifetime career."
The trial court also implicitly held that the certificate of deposit was community property. The court noted that although the certificate of deposit was not presented to it, the defendant had listed it on his detailed descriptive list as his separate property, and the plaintiff had testified that the last information she had about the certificate of deposit was that it was at Louisiana Bank and Trust Company. The court held that the plaintiff was entitled to one-half of the face amount of the certificate.
Also, the trial court accepted the plaintiff's testimony with respect to the vehicles and thus determined that the plaintiff received only one-half, rather than all, of the proceeds from the sale of the station wagon and that the defendant was not entitled to reimbursement with respect thereto.
The court also denied the defendant's claim for reimbursement for the sums he alleges to have expended for repairs to the plaintiff's car (her separate property) because these expenses were not substantiated by the record. The trial court did hold that the defendant was entitled to reimbursement for one-half of the insurance which he had paid on the station wagon.
The trial court denied the defendant's claim for reimbursement for the payment of community debts incurred in the operation of the dairy business because it found that these debts had been paid with the buyout funds which were community funds and not his separate funds.
Finally, the trial court found that the defendant owed the plaintiff $7,887.68 in reimbursements. In its "Concluding Written Reasons for Judgment," the court gave the defendant the option of either executing an unsecured promissory note for the amount owed or tendering cash for the amount owed. The judgment of partition does not specify the method of payment.
*344 The defendant appealed, asserting that the trial court erred in finding that the following was community property: the two tracts of land, the $188,000 lump sum paid by the Department of Agriculture under the buyout agreement and the certificate of deposit.
Although he did not make an assignment of error on this point, the defendant argues in his brief that the trial court erred in its treatment of the plaintiff's automobile and of the payments that he made on that automobile for which he claims reimbursement from the community. The defendant also asserts that the trial court erred in denying him reimbursement in the amount of the community debts and the plaintiff's separate debts which he alleges that he paid. The defendant, however, does not articulate how the trial court erred. Finally, he argues that the plaintiff's diamond ring is community property.
The plaintiff answered the appeal and asserted several assignments of error. First, she argues that the trial court erred in admitting parol evidence on the issue of whether the transfer of the two tracts of land to the defendant was a donation or a sale, in declaring that the yearly payments under the buyout agreement were the separate property of the defendant, in allowing the defendant to give her an unsecured promissory note for the amount he owes her, and in failing to award interest on this amount from the date of the first payment of the buyout funds or, in the alternative, from the date of the filing of suit.
Finally, the plaintiff argues that the judgment should be modified to recognize that some stock in an entity referred to as the DeSoto Parish Warehouse is community property. Although the judgment divided the dividends from the stock between the couple, it did not address the issue of the stock itself. The defendant listed the stock as community property on his detailed descriptive list.
The issues presented by the assignments of error and arguments of the parties can be broken down into four broad categories. These are: (1) the two tracts of land, (2) the dairy buyout agreement, (3) specific items of property and claims for reimbursement (for community debts allegedly paid with separate funds) and (4) the payment of the balance due.

THE TWO TRACTS OF LAND
LSA-C.C. Art. 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." There is no dispute that the two tracts of land were acquired during the existence of the community.[1] Mr. Burford acquired the 70-acre tract in 1974 and the 130-acre tract in 1977. He and his wife were legally separated in 1983.
Although this article became effective after the transfers of the two tracts occurred, it applies retroactively to the transfers. See Tullier v. Tullier, 464 So.2d 278 (La.1985); Wood v. Wood, 424 So.2d 1143 (La.App. 1st Cir.1982). LSA-C.C. Art. 2340 eliminated the double declaration requirement. Tullier v. Tullier, supra; Wood v. Wood, supra.
Mr. Burford may thus prove the two tracts of land are his separate property, but he has the burden of overcoming a strong presumption in favor of community. Tullier v. Tullier, supra; Curtis v. Curtis, 403 So.2d 56 (La.1981). This burden has been described variously by the jurisprudence. Arruebarrena, Applying Louisiana's Community Property Principles to Pensions, 33 Loy.L.Rev. 241, 257 n. 73 (1987); Tullier v. Tullier, 450 So.2d 1016 (La.App. 1st Cir.1984), aff'd, 464 So.2d 278 (La.1985). The burden is probably best described as clear and convincing. See Cox v. Cox, 398 So.2d 1171 (La.App. 2d Cir. 1981).
The defendant contends that the transfers of the two tracts of land were not sales but were donations. Property acquired by a spouse by donation to him *345 individually is, of course, separate property. LSA-C.C. Art. 2341.[2]
At the outset, we consider the plaintiff's contention that the trial court erred in considering parol evidence that the property was community. Mrs. Burford argues that the cash and credit deeds were authentic acts and that under LSA-C.C. Art. 1848, testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act.
The parol evidence rule applies only where the enforcement of an obligation created by the writing is substantially the cause of action. Wampler v. Wampler, 239 La. 315, 118 So.2d 423 (1960); Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.1982), writ denied, 422 So.2d 162 (La.1982). It does not apply when the writing is collateral to the issue involved. Wood v. Wood, supra; Levraea v. Franchina, 499 So.2d 264 (La.App. 1st Cir.1986); Gulf Federal Savings Bank v. Zoblotsky, 496 So.2d 1247 (La.App. 5th Cir.1986). Since the act of sale is collateral to the issue involved here, the parol evidence rule is not applicable. Levraea v. Franchina, supra. The trial court thus correctly ruled in allowing the defendant to introduce parol evidence.
Mr. Burford contends that the transfers were disguised donations. A disguised transfer seems on its face to be a valid sale, but is intended by the parties to be a gift rather than a sale. Owen v. Owen, 336 So.2d 782 (La.1976); Moore v. Moore, 427 So.2d 1320 (La.App. 2d Cir. 1983); Brumfield v. Brumfield, 457 So.2d 763 (La.App. 1st Cir.1984). As proof that the transfer was intended to be a donation, the defendant relies on his testimony and that of his father. Mr. Burford testified that neither he nor his wife had paid his father for the two tracts of land. Mr. Burford considered the land part of his inheritance. Mrs. Burford testified that she viewed the transfers as sales. She also testified that she did not know whether the $5,000 down payment on the 130-acre tract and the $10,000 sale price on the 70-acre tract had ever been paid.
Mr. Burford, Sr. testified that his son had never paid him any money for the property. Also, Mr. Burford, Sr.'s will was introduced into evidence. In 1979, Mr. Burford, Sr. executed a will in which he left all of his children except Mr. Burford, Jr. various tracts of land. The will stipulates that Mr. Burford, Jr. "has already received his real estate inheritance by gift and donations or by funds provided for the purchase thereof from my beloved wife and myself, which is the reason no specific bequest of real estate is given to my said beloved son, Charles Elmer Burford, Jr."
There was also testimony that the couple paid $200 a month to Mr. Burford, Sr. The trial court determined that these sums were obviously payments on the credit deed, in spite of Mr. Burford's and his father's testimony that the $200 was for rent on a barn which Mr. Burford, Sr. had erected on the second tract. The record does indicate that this barn was erected approximately two years prior to the deed on the second tract and that the $200 payments started shortly thereafter. Mrs. Burford conceded at trial that the $200 had been shown as rental on certain tax returns, although she insisted that the $200 went to the purchase price. However, the 1983 and 1984 tax returns show that the parties depreciated the barn on these returns.
With respect to the 130-acre tract, we have little difficulty affirming the trial court. As we have pointed out, Mr. Burford's burden is a strong one. The defendant and Mr. Burford, Sr. both testified that the $5,000 down payment had not been made and that no payments had been made on the property. There is also the will, but we note that the will not only refers to gifts or donations of real estate but also to "funds provided for the purchase thereof." Also, Mr. Burford, Sr. testified that he did not renounce any right to collect a note and that he could foreclose on the mortgage if he wished.
*346 In short, the evidence with respect to this tract is conflicting. The defendant's burden is difficult. We thus cannot determine that the trial court erred with respect to this tract.
The 70-acre tract presents a more difficult question. While defendant still has the same difficult burden, there is less evidence on which to judge the question. On the one hand, we have the testimony of the two Mr. Burfords that the transfer was a donation. Consistent somewhat therewith is the will of Mr. Burford, Sr. dated in 1979, apparently prior to the matrimonial difficulty which gave rise to this litigation. As noted above, however, the will indicates the possibility that funds were provided by Mr. and Mrs. Burford, Sr. for the purchase of property, leaving open the possibility that money was given which was in turn used to purchase the property. It is interesting that the deeds do not contain any language indicating that the property was to be the separate property of Mr. Burford, Jr. or that he used his separate funds in purchasing the property. It is also interesting that Mr. Burford did not offer the testimony of the notaries or attorneys who prepared the deeds in question.
On the other hand, the parties mortgaged this property to a local financial institution for the purpose of erecting their family home thereon. They paid on that mortgage with community funds. Of course, one of the reasons a donation is shown as a sale is so the property may be mortgaged. On the other hand, there is obviously no counterletter indicating the transaction was in fact a donation.
In the final analysis, we are again particularly influenced by the strong nature of the defendant's burden and the trial court's resolution of the issue. The trial court determination with respect to the two tracts of land will therefore be affirmed.[3]

THE DAIRY BUYOUT FUNDS
As stated earlier in the opinion, the parties entered into a contract with the U.S. Department of Agriculture under a federal dairy buyout program. Under the terms of the contract, the parties agreed to sell their dairy herd and to forgo working in the dairy business for five years from the date of the buyout. They were to receive $236,000 for this agreement. They received $188,000 in the first year, and they were to receive the balance in four yearly payments of $11,800. The trial court determined that the $188,000 lump sum payment was community property but that the yearly payments were the defendant's separate property.
It is unnecessary to determine whether the funds are community or separate property. A copy of the "Contract to Participate in the Dairy Termination Program," which we have referred to as the federal dairy buyout program, is in evidence as Exhibit D-3 and was signed by both parties. The contract provided that each was to receive fifty percent of the funds.
According to LSA-C.C. Art. 1971, "[p]arties are free to contract for any object that is lawful, possible, and determined or determinable." See Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845 (1961). Legal agreements have the effect of law upon the parties who have formed them and the courts are bound to give legal effect to all such contracts according to the true intent of all the parties. Pendleton v. Shell Oil Company, 408 So.2d 1341 (La. 1982); Investor Inns, Inc. v. Wallace, 408 So.2d 978 (La.App. 2d Cir.1981).
Thus, the plaintiff and the defendant agreed and entered into a contract to split the buyout funds between them. This contract is not unlawful or contrary to good morals; thus, each is entitled to one-half of the $236,000. Of this sum, the evidence indicates that $38,248.24 of the initial payment of $188,000 was used to purchase a certificate of deposit and was set aside for tax obligations. The trial court further determined that the remainder of the $188,000, *347 approximately $150,000, was used to pay community obligations. Mr. Burford challenges the trial court's disposition with respect to the certificate of deposit and we will deal with that challenge in the next section. However, Mrs. Burford does not challenge the trial court's disposition with respect to the remaining $150,000.
Therefore, the plaintiff, Mrs. Burford, is entitled to receive one-half of each of the four payments of $11,800. Since the date of the contract on the dairy buyout was in March of 1986, the first payment had been received at the time of trial. Presumably, the second payment was received in March of 1988 and the third has just been received in March of 1989. Since the contract with the federal government on the dairy buyout program calls for the funds to be divided fifty percent to Mr. Burford and fifty percent to Mrs. Burford, we presume that the checks that have been received were made out to both parties. However, the record is very unclear as to how the checks were made out and what disposition was made of the funds received from the first check which was paid prior to trial.
Mr. Burford, if he received these funds solely, owes one-half of each check to Mrs. Burford. However, we hesitate to make a disposition in the decree with respect to these funds because of our presumption that the checks were made payable jointly and because of the state of the record. We will therefore simply note in the judgment that each side is entitled to one-half of these funds and make no mention of either party owing the other as a result. Thus, if Mrs. Burford has not received one-half of the funds which have already been paid, then Mr. Burford owes her one-half of those funds. The right of Mrs. Burford to proceed against Mr. Burford to obtain one-half of the funds already received from the yearly $11,800 dairy buyout payments will be reserved, to the extent that she has not received those funds.

SPECIFIC ITEMS OF PROPERTY AND CLAIMS FOR REIMBURSEMENT
Mr. Burford contends that the trial court erred in determining that a diamond ring was the separate property of Mrs. Burford. However, his argument in that respect is sparse and he does not indicate in what fashion the trial court erred. The disposition of the diamond ring by the trial court is thus affirmed.
As we previously noted, Mr. Burford complains that the trial court ruled that Mrs. Burford was entitled to one-half of the value of the certificate of deposit because it was clearly community property and was listed in Mr. Burford's detailed descriptive list. The court, therefore, gave Mrs. Burford credit for $19,124.12 representing funds due her from Mr. Burford from the certificate of deposit. We agree with Mr. Burford in this instance. Mrs. Burford specifically testified that the certificate had been seized by the IRS for tax liabilities and was "gone." Mr. Burford likewise agrees in brief that the funds were used to pay the taxes of the parties. It was error for the trial court to include this item in the property to be partitioned, and this sum will be deleted from the judgment.
The plaintiff, Mrs. Burford, contends that the stock in the DeSoto Parish Warehouse, which is apparently an agricultural co-op in DeSoto Parish not related to the parties' dairy enterprise, was overlooked by the trial court. During trial, Mr. Burford conceded that the plaintiff was entitled to one-half of this stock. It will be necessary to amend the trial court judgment to award each party one-half of the stock in this warehouse.
The defendant, Mr. Burford, also contends that the trial court erred in failing to give him full credit for payments he made on certain community obligations and separate obligations of Mrs. Burford. However, he fails to specify in what fashion the trial court erred. We will therefore not disturb the determination of the trial court in this respect.

PAYMENT OF BALANCE DUE
Plaintiff's last contention is that the trial court erred in allowing the defendant to give her an unsecured promissory note for the amount he owed her and in failing to award interest on this sum. The law now *348 allows the trial court to handle a balance due after partition of the property by awarding it in an unsecured promissory note. LSA-R.S. 9:2801(4)(c). However, at oral argument, both counsel were quite specific in stating that neither party wanted an unsecured promissory note for any amount which they might be owed in the final analysis.
Because of our deletion of one-half of the certificate of deposit of $38,248.24 from the amount owed to Mrs. Burford and because of our uncertainty over the disposition of each of the yearly buyout payments of $11,800, the result will be that Mrs. Burford owes funds to Mr. Burford. Of course, as we have previously noted, and will specify in the decree, this determination presumes that Mrs. Burford has received her one-half of each of the $11,800 yearly buyout payments.
We will therefore amend the judgment to reflect the amount due Mrs. Burford from Mr. Burford, not allow a note therefor, and reserve her rights with respect to any sums she has not received on the $11,800 yearly payments.

DECREE
For the reasons aforesaid, the judgment of partition of the trial court will be amended in the following respects.
ADDED is item 1(A) on page 1 of that judgment listed under property to be "partitioned in equal proportions of one-half to each party" is each of the four (4) yearly payments of $11,800.00 under the dairy buyout agreement.
DELETED is item 1 on page 2 of that judgment listed under "the separate property... of Charles E. Burford, Jr." being "$11,800 to be received for 3 years under the Dairy Buyout Agreement ... Aggregate Total $35,400.00"
DELETED is item 3 on page 3 of that judgment listed under reimbursements owed by Charles E. Burford, Jr., $19,124.12, being "[o]ne-half USDA Dairy Buyout Agreement funds of $38,248.24 placed in Louisiana Bank and Trust Co. Certificate of Deposit."
ADDED as item 5 on page 2 under the category (appearing on page 1) of income, cash and liabilities of the community regime of Charles E. and Sharon Burford to "be partitioned in equal proportions of one-half to each party" is all stock owned by the parties in that entity described in these proceedings as the DeSoto Parish Warehouse.
CHANGED to $1,933.00 is the total reimbursement due to Mrs. Burford by Charles E. Burford at the bottom of page 3 of the judgment.
It will likewise be necessary to amend the paragraph at the top of page 4 to show that funds are owed Mr. Burford by Mrs. Burford subject to whatever disposition has occurred to the yearly payments of $11,800.00. That paragraph will therefore be amended as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Sharon Porter Burford hereby tender to Charles E. Burford, Jr. the sum of $11,236.44; and it is decreed that this sum does not include the $11,800.00 yearly buyout payments, which presumably have been and will be shared. (Her right to proceed against him for one-half of the yearly payments of $11,800.00 which she may not have received is hereby reserved.)
Costs of this appeal are to be borne equally by the parties.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] The two tracts were said to be sold to Mr. Burford as "husband of Sharon Porter Burford."
[2] Formerly LSA-C.C. Art. 2334.
[3] Because the parties have done so, we have dealt with this issue in the context of a donation to Mr. Burford versus a purchase by the community. It just as well could have been considered in the context of a donation to the community. See Allen v. Allen, 539 So.2d 820 (La.App. 3d Cir.1989).