607 So.2d 626 (1992)
Dorothy Dale REEVES, Plaintiff-Appellant,
v.
Robert Roger REEVES, Jr., Defendant-Appellee.
No. 23679-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
Writ Denied November 30, 1992.
*627 Love, Rigby, Dehan & McDaniel by Kenneth Rigby, Shreveport, for plaintiff-appellant.
Sandoz, Sandoz & Schiff by Lawrence B. Sandoz, Jr., Opelousas, for defendant-appellee.
Before MARVIN, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Robert Roger Reeves, Jr. and Dorothy Dale Reeves were married on June 10, 1944 and divorced in November 1980. Their community of acquets and gains was terminated retroactive to December 5, 1979, the date the divorce petition was filed. The parties traversed the respective detailed descriptive lists. The court appointed an appraiser and a certified public accountant to aid in the valuation and accounting of the assets and liabilities of the former community.
After an extensive trial, the trial court issued three written opinions, dated December 23, 1987, July 11, 1988, and December 21, 1990. The June 27, 1991 judgment allocated numerous community movable and immovable properties to each of the parties and ordered that Mr. Reeves pay an equalizing payment to Mrs. Reeves of $131,607.56, payable by a promissory note secured by his mortgage on his separate *628 property. Mrs. Reeves appeals. We affirm.

Vidal Island/Tick Farm
At issue in appellant's first two assignments is property known as the Vidal Island Tract/Tick Farm, two parcels of land, hereinafter referred to as Vidal Island. John Dale, Jr. and Alma R. Dale had four children, one of whom is appellant Dorothy Dale Reeves. On or about December 14, 1973, the Dales transferred Vidal Island to their four children. As a result of this transaction, appellant acquired a one-fourth interest in Vidal Island during her marriage to appellee.
The transaction was accomplished by credit sale deed, a series of $6,000 promissory notes, and assumption of mortgages on the property, all of which were executed by the contracting parties. The Dales subsequently made annual donations via the notes which were eventually cancelled, such that the children did not pay on the series of notes. According to appellant, the transaction was a donation rather than a sale and her one-fourth interest in Vidal Island is therefore separate rather than community.
Article 2340 of the Louisiana Civil Code provides as follows:
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.
The classification of property as separate or community is fixed at the time of its acquisition. Luffey v. Luffey, 572 So.2d 1045 (La.App. 2d Cir.1990); Dance v. Dance, 552 So.2d 658 (La.App. 2d Cir.1989); Terry v. Terry, 565 So.2d 997, 999 (La.App. 1st Cir.1990). As the Louisiana Supreme Court stated in Tullier v. Tullier, 464 So.2d 278, 283 (La.1985),
The party asserting the separate nature of the property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community.
Mrs. Reeves may thus prove that Vidal Island, which was acquired during the parties' marriage, is her separate property but she has the burden of overcoming a strong presumption in favor of community. See Burford v. Burford, 541 So.2d 341, 344 (La.App. 2d Cir.1989). The jurisprudence has described this burden in various ways, but it is probably best described as clear and convincing. Burford, supra; Johnson v. Johnson, 582 So.2d 926 (La. App. 2d Cir.1991); Bernardi v. Chesson, 551 So.2d 678, 680 (La.App. 1st Cir.1989); Succession of Lyons, 452 So.2d 1161, 1165 (La.1984).
The presumption of community may be rebutted by parol evidence. Bridges v. Osborne, 525 So.2d 337 (La.App. 1st Cir.1988), writ denied, 530 So.2d 567 (La.1988); see also, Levraea v. Franchina, 499 So.2d 264 (La.App. 1st Cir.1986). However, the contradicted testimony of a litigant is insufficient to overcome the presumption of community. Abercrombie v. Abercrombie, 434 So.2d 1139, 1143 (La. App. 2d Cir.1983), writ denied, 440 So.2d 760 (La.1983); Cox v. Cox, 398 So.2d 1171 (La.App. 2d Cir.1981); Powers v. Powers, 604 So.2d 210 (La.App. 2d Cir.1992).
The trier of fact is not to be reversed on an evaluation of credibility which furnishes a basis for the trial court's finding of fact unless that finding is manifestly erroneous. Allbritton v. Allbritton, 561 So.2d 125, 129 (La.App. 3d Cir.1990), writ denied 565 So.2d 445 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Vidal Island transaction was handled as a credit sale in which, as consideration for the transfer, appellant and her siblings assumed mortgages on the property and executed more than thirty promissory notes in the amount of $6,000 each. Appellant contends the transaction was in fact a donation. The trial court found that appellant and her siblings purchased the land, with the executed promissory notes and assumed mortgages as consideration, and that appellant's parents subsequently donated the promissory notes to appellant and her siblings. These factual findings *629 are based upon credibility determinations by the trial court. The trial court concluded that Dorothy Dale Reeves did not carry her burden of proving that the Vidal Island/Tick Farm, acquired during the marriage, was separate rather than community property. We find no manifest error in either the trial court's findings or its conclusion derived therefrom.

Shreveport Townhouse
Appellant asserts that the trial court erred in classifying her Shreveport townhouse as community property because she used $16,000 of her separate funds for part of the down payment. Appellant purchased the townhouse prior to termination of the community. The trial court specifically found that the down payment was made from community funds and not from appellant's separate funds.
The deed states that this property was sold to appellant and appellee for $21,856.56 cash and the assumption of the balance on the property's mortgage. The $16,000 appellant asserts were her separate funds was paid by check written on the joint account of appellant and appellee. Although appellant asserts that she borrowed these funds on her separate property and deposited them in the community account, the record contains no evidence to corroborate this testimony. Appellant's testimony about the separate nature of the townhouse is contradicted by other evidence, and is therefore insufficient to sustain her clear and convincing burden of proof. We find no manifest error in the trial court's determination that the townhouse is community property.

Elmly Plantation Fee Title
For many years, appellee Mr. Reeves' and his mother's family owned immovable property known as the Elmly Plantation. In December 1951, appellee and his mother, Sophie Cotton Reeves, each acquired a one-half interest in the fee title to Elmly Plantation via a partition among members of the Cotton family. Because Elmly's value was more than that of the properties acquired by other members of the appellee's family in exchange for Elmly, appellee and his mother paid a "boot" of $31,667 cash to the other parties to the partition in order to equalize the values of the exchanged properties.
The trial court found that appellee paid only $7,030 of community funds as part of this "boot". The trial court determined that this amount was inconsequential in relation to the value of the property acquired. The trial court then classified this one-half Elmly interest as appellee's separate property and concluded that appellee owes a debt to the community for the $7,030.
Separate property includes property acquired with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used. LSA-C.C. art. 2341. If community property has been used for the acquisition of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used. LSA-C.C. art. 2366.
When separate immovable property is exchanged for other like property and the main consideration is real estate, payment of a boot to equalize the value of the properties exchanged does not alter the classification of the property as separate. See Dillon v. Freville, 129 La. 1005, 57 So. 316, 319-320 (La.1912).
The partition states that Sophie Cotton Reeves paid $10,000 in cash from her separate funds. Appellant asserts that the $21,667 balance was paid by appellee with community funds. She contends that this one-half interest is community because it was acquired with community funds. We disagree.
Appellee acquired a one-half interest in Elmly with a cash "boot" and an exchange of separate property. He testified that, of the $21,667 balance, he paid $7,030 with community funds and the remainder came from the sale of assets from other separate properties. Based upon appellee's testimony, the trial court found that he paid only *630 $7,030 from community funds. There is no evidence in the record to refute appellee's testimony in this regard, and we do not disturb this factual finding.
Testimony revealed that, solely for the purposes of the partition among family members, the value assigned to the property acquired by appellee and his mother was $50.58 per acre. The property description in the partition describes the land as containing 1516 acres, more or less, valued at approximately $76,680. The value of a one-half interest in this property would be approximately $38,340.
The trial court found that the $7,030 was inconsequential in relation to the property acquired and that appellee owes a debt to the community for the $7,030. We find no manifest error in the trial court determination that the community funds, which at the time of the partition amounted to less than twenty per cent of the value of the one-half interest acquired, were inconsequential. See and compare Lambert v. Lambert, 480 So.2d 784, 786 (La.App. 3d Cir.1985). Because this determination is neither clearly wrong nor manifestly erroneous, we find this assignment meritless.
Appellant alternatively contends that, although the one-half interest in the 1516 acres was acquired en masse, a pro rata share of the total acreagei.e., the number of acres, valued at $50.58 each, which could be purchased with the $7,030 is community property. She asserts that the trial court erred by allocating the entire one-half interest to appellee as his separate property. Appellant cites no authority to support this argument, and we do not find it persuasive.

Elmly Plantation Mineral Rights
As noted above, members of the Cotton family executed a partition among the heirs to Elmly Plantation via which appellee and his mother, Sophie Cotton Reeves, each acquired a one-half interest in the Elmly Plantation in 1951. In April 1966, Sophie sold her one-half interest to appellee. The one-half interest in the Elmly fee title acquired in the partition is appellee's separate property. Appellee concedes the community nature of the other half of Elmly which he acquired from Sophie Cotton Reeves by credit sale deed in 1966. Thus, the parties' community interest in Elmly Plantation began with the 1966 credit sale to appellee of Sophie Reeves' one-half interest.
In both the 1951 partition and the 1966 deed, there was a reservation of all mineral interests. Appellant contends that each reservation created a mineral servitude which prescribed due to nonuse, therefore the ownership of mineral rights reverted to the community's ownership of Elmly's fee title. She claims entitlement to one-half of all Elmly mineral rights.
We first address the question of whether there was a reversion of mineral rights to community ownership of the fee title.
The sale or reservation of mineral rights creates a real right or servitude to go upon the land of another to explore for, produce and reduce to possession the underlying minerals. Horton v. Mobley, 578 So.2d 977, 983 (La.App. 2d Cir.1991), writ denied, 582 So.2d 1310 (La.1991). A reservation of minerals is extinguished by prescription of nonuse if not exercised within ten years and a mineral servitude owner then loses his rights unless some event or condition intervened during that time to interrupt the running of prescription. Horton, supra at 985.
LSA-R.S. 31:29 states what is required to interrupt the running of prescription for nonuse:
§ 29. How prescription of nonuse is interrupted
The prescription of nonuse running against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals. By good faith is meant that the operations must be
(1) commenced with reasonable expectation of discovering and producing minerals in paying quantities at a particular point or depth,
(2) continued at the site chosen to that point or depth, and
*631 (3) conducted in such a manner that they constitute a single operation although actual drilling or mining is not conducted at all times.
As stated in Bass Enterprises Production Co. v. Kiene, 437 So.2d 940, 945 (La.App. 2d Cir.1983).
The question of whether the operations engaged in in connection with a particular well constitute a use of the servitude in such a manner as to interrupt the running of prescription is a question of fact dependent upon the particular circumstances under which the operations were conducted and the factor of good or bad faith on the part of the operators is inextricably connected with, although perhaps not wholly decisive of, the factual situation presented.
As in Bass, supra, appellant does not challenge the good faith of the drilling operations on Elmly Plantation. Appellant notes that appellee does not rely upon LSA-R.S. 31:36 production to interrupt the running of prescription because all operations for the discovery and production of minerals resulted in dry holes. However, prescription may be interrupted by the drilling of a dry hole in good faith. See Barnwell, Inc. v. Carter, 220 So.2d 741 (La.App. 2d Cir. 1969), writ denied, 254 La. 140, 222 So.2d 885 (1969).
Appellant correctly points out that there is no proof that the ten year prescriptive period was interrupted during the ten years following the 1951 partition. We have already determined that the one-half interest in the Elmly fee title, which appellee acquired via the 1951 partition, is his separate property. If there were no interruption between 1951 and 1961, the mineral rights would have reverted to appellee and his mother as owners of the fee title, and appellee would have acquired half of the Elmly mineral rights as his separate property. If prescription were interrupted, the reservation of minerals would have continued through appellee's 1966 acquisition of the remaining interest in Elmly's fee title. In either event, the community had no interest in either the fee title or the mineral rights prior to 1966. For this reason we need not determine whether interruption or reversion occurred prior to 1966.
Appellant asserts that, by the end of 1961, appellee and his mother each owned one half of the Elmly mineral rights. Appellant claims that, in the 1966 credit sale, Sophie Reeves reserved only 13/60 of her 30/60 (one-half) interest in the Elmly mineral rights and therefore transferred the remaining 17/60 to appellee along with her one-half interest in the fee title. In its 1987 opinion, the trial court interpreted the reservation in the 1966 credit sale deed as follows:
On April 25, 1966, Sophie Reeves deeded her one-half interest in Elmly Plantation to her son Mr. Reeves, with the following reservation: "... Vendor reserves unto herself, her heirs and assigns, all of oil, gas, and other mineral rights which she presently owns under the property hereinabove described (being 13/60 of the whole of the oil, gas and other minerals under Elmly Plantation)..." [Emphasis added]. It is clear by this reservation that Sophie Reeves reserved all minerals that she had in Elmly unto herself, believing at that time that she only owned 13/60 of said minerals.
This interpretation of the deed is neither clearly wrong nor manifestly erroneous. Accordingly, we do not disturb the trial court's factual finding that Sophie reserved all of her mineral rights, rather than the 13/60 contended by appellant.
In 1974, members of the Cotton family executed a series of documents through which appellee acquired Elmly mineral rights via exchanges of separate property. These documents declared the rights acquired by appellee to be his separate property. Appellee had acquired all but his mother's interest in these mineral rights prior to her death in 1981 by either (1) reversion due to prescription of nonuse, (2) inheritance, or (3) exchange of separate property. Upon the death of his mother, appellee inherited the remaining Elmly mineral rights. By 1981, appellee owned all of the Elmly mineral rights.
There is evidence that wells were drilled on Elmly in 1975, 1980, and 1983. Thus, *632 for the time period beginning in 1966 when the community acquired its interest in Elmly, testimony and other evidence support the trial court finding that the ten year prescription for nonuse was interrupted at all pertinent times through trial. The trial court correctly determined that there was no reversion to community ownership of reserved mineral rights. Because the appellee acquired all the Elmly mineral rights by either inheritance or by exchange of separate property, and there was no reversion of mineral rights to the community's ownership, we conclude that the trial court did not err in finding that all rights to the Elmly minerals are appellee's separate property.

Catahoula Bank Stock
Appellant challenges as error the trial court's determination that 315 shares of Catahoula Bank stock, issued as a stock dividend, are appellee's separate property. Appellant's brief includes a lengthy discourse on accounting principles and the difference between a stock split and stock dividend. Appellant urges that Daigre v. Daigre, 228 La. 682, 83 So.2d 900 (1955), upon which the trial court relied, is not well reasoned and reflects neither an understanding of relevant accounting principles nor a proper application of Louisiana community property law.
Appellant's argumentthat the dividend is essentially a civil fruit, and therefore is communityis persuasive. However, we are constrained by the jurisprudence which holds otherwise. See Daigre, supra; Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir. 1978). Accordingly, we find no manifest error in the conclusion reached by the trial court.

Accounting for Sale of Eutah Plantation
In March 1979, appellee sold a community tract known as the Eutah Plantation for $410,000. Appellant notes that appellee owes to her an accounting of these community funds and asserts that appellee accounted for all but $50,000 of the proceeds. Appellant claims entitlement to one half of this unaccounted for amount and requests that this court charge appellee with half of this amount and eliminate the credits given to appellee for 1984 and 1985 payments he made in the respective amounts of $18,948.72 and $11,733.03.
Milton E. Kelly, a certified public accountant, was retained by appellant to determine the disposition of the Eutah Plantation sale proceeds. Kelly testified that he accounted for all but $25,000 of the proceeds. The trial court found that appellee's accounting was sufficient to sustain his burden regarding the sale proceeds. We find no error in this determination. Because the trial court did not err in its acceptance of appellee's accounting, we make no adjustments for credits given to appellee for payments.

Allocation of Movables
Each party filed a descriptive list, and each traversed the descriptive list of the other. Appellant asserts that, with regard to movables located at Harrisonburg House, the items listed in her October 30, 1986 detailed descriptive list should be decreed to be community. The remaining items should be either her separate property or that of the children, as indicated in her list.
Appellant also contends that, with the exception of certain specified items, the movables located at Elmly Plantation are community property, her separate property, or the property of one or more of the children. She requests that this court decree the character of these items in accordance with her October 30, 1986 detailed descriptive list and supplemental traverse.
The trial court has great discretion in effecting a fair partition, and is not required to accept, at face value, a spouse's claims against the community. Donnell v. Donnell, 567 So.2d 1143, 1148 (La.App. 2d Cir.1990); LSA-R.S. 9:2801. Although appellant asserts that the trial court should have allocated certain movables differently, we find no abuse of discretion in the trial court's allocation of the movables.
Appellant also requests that this court reserve her right to seek damages *633 against appellee for missing or damaged movable property allocated to her. Appellant cites no statutory or jurisprudential support for this request. Moreover, in April 1987, the parties adduced testimony and other evidence from appraisers about the absence of items on the detailed descriptive lists, as well as the value and condition of the existing items. We find no merit to this assignment and deny appellant's request with regard to any claim for which evidence was adduced at trial, or any claim which has prescribed.

Equalizing Payment
As an equalizing payment, the trial court ordered that appellee pay $131,607.56 to appellant in 120 consecutive monthly installments, with an annual interest rate of 11 percent. Appellant argues that, after termination of the community, appellee had use of substantial community funds, interest free. She complains that she has not been awarded interest on her portion of these community funds, and therefore asks that this court order cash payment of the equalizing payment, as authorized by LSA-R.S. 9:2801(4)(c).
In the event that the allocation and assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
The express language of R.S. 9:2801(4)(c) grants the trial court the discretion to order the instant equalizing payment. This discretion is not conditioned upon the whether appellee had interest free use of community funds. This assignment has no merit.

Community Mineral Interests
The trial court judgment allocated one-half of the community mineral interests described in Exhibit "M" to each of the parties. Appellant asserts that Exhibit "M" does not include all of the community mineral interests, but she does not specify which interests were omitted. Appellant requests that the judgment be amended to include all community mineral interests. Appellee, on the other hand, states that all of the community mineral interests are described in Exhibit M.
During the years since the 1987 trial of this partition proceeding, appellant has had adequate opportunity to address this matter before the trial court. We find no merit to this assignment.
In addition, appellee asserts that she does not desire to be an owner in indivision with appellee with regard to these mineral interests, and requests allocation to her of all mineral interests in, on or under the immovable property allocated to her.
The trial court has discretion to divide a particular asset or liability equally or unequally or to allocate it in its entirety to one of the spouses. LSA-R.S. 9:2801(4)(c). The trial court allocated one-half of each community mineral interest to each party and decreed each party to be the owner of his or her one-half interest. Appellant has not shown that the trial court's allocation of the community mineral interests is either an abuse of its discretion or is inequitable. See LSA-R.S. 9:2801(4).

Costs
Finally, appellant requests that appellee be assessed all costs of this partition proceeding, asserting that it is equitable to do so. Appellee correctly points out that C.C.P. art. 1920 grants the discretion to render judgment for costs as the court deems equitable. The trial court's assessment of costs to the parties, equally, is not an abuse of this discretion. Accordingly, we find no merit to this assignment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs. Appellant's remaining specifications *634 of error were not briefed and are therefore considered abandoned.
AFFIRMED.