658 So.2d 734 (1995)
Phyllis Ann Goodwin SALSBURY, Plaintiff-Appellee,
v.
Charles Glenn SALSBURY, Defendant-Appellant.
No. 27062-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
*736 Bobby L. Culpepper, Jonesboro, for appellant.
Robert P. McLeod, Monroe, for appellee.
Before SEXTON, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Charles Glenn Salsbury, appeals a judgment of partition rendered in favor of his former wife, Phyllis Ann Goodwin Salsbury. Finding no manifest error in the district court's judgment, we affirm.

FACTS
The parties were married in Jackson Parish, Louisiana, on November 11, 1967, and lived under the legal regime of community of acquets and gains. On October 25, 1991, Mrs. Salsbury filed a petition for divorce from Charles Salsbury. Incidental to the divorce proceeding, she filed a petition to partition the former community property. A final judgment of divorce which reserved all rights relating to the partition of their community property was rendered on February 25, 1993, and a final judgment partitioning their community property was rendered on February 9, 1994.
Mr. Salsbury appeals the judgment of partition, challenging the trial court's ruling that the hardware store, investment accounts and the former family home were community property rather than his separate property. He also contends the attorney fees are excessive and should be reduced.

DISCUSSION

Land and Improvements
The community property of spouses comprises, inter alia, property acquired with community things, and property donated to the spouses jointly. LSA-C.C. Art. 2338. The separate property of a spouse comprises, inter alia, property acquired by donation to a spouse individually. LSA-C.C. Art. 2341. A strong presumption exists that things in the possession of a spouse during the existence of a regime of community of acquets and gains are assets of the community. LSA-C.C. Art. 2340. The spouse claiming that the property is separate property has the burden of rebutting this presumption by clear and convincing evidence. Reeves v. Reeves, 607 So.2d 626, 628 (La.App. 2d Cir.), writ denied, 608 So.2d 1010 (La.1992); Dance v. Dance, 552 So.2d 658, 662 (La.App. 2d Cir.1989).
The property at issue was acquired and possessed by the spouses during the existence of the community property regime. Therefore, Mr. Salsbury, the spouse claiming it to be his separate property, had the burden of disproving the presumption of community. Mr. Salsbury claims the property is his separate property because he paid nothing for the land and his parents, both of whom are now deceased, intended to donate it to him individually. Relying on LSA-C.C. Art. 2366, Mr. Salsbury argues that the house built on the land is also his separate property.[1] Therefore, he asserts, Mrs. Salsbury is entitled only to reimbursement for her share of the community property used to build the house.
In support of his claim, Mr. Salsbury introduced evidence showing that, following his father's death and more than a decade after the transfer of the one and one-half acre tract, Mr. Salsbury's mother donated an additional three and one-half acres of land to him. In the act of donation, she transferred five acres of land to each of his siblings. Mr. Salsbury contends his parents intended to donate the first one and one-half acre tract of *737 land to him, just as his mother donated the three and one-half acre tract to him, so that each of their children would have received a total of five acres of land. Mr. Salsbury also proffered the testimony of two of his siblings to corroborate his claim that his parents intended to donate the first one and one-half acres to Mr. Salsbury.[2]
Assuming, arguendo, that the proffered evidence was admissible and that Mr. Salsbury proved he acquired his interest in the land via donation, he still had to prove by clear and convincing evidence that it was donated to him individually. The cash sale deed transferring the one and one-half acres was executed on a pre-printed form which stated that the land was transferred to: "Charles G. Salsbury, married to and living with Phyllis Salsbury (Nee Goodwin).... TO HAVE AND TO HOLD said described property unto said purchaser, their heirs and assigns forever." (Emphasis added.) The word "their" in the last sentence was manually typed on the pre-printed form. Thus, it appears the parents intended to transfer the property, either by sale for a minimal sale price, or by donation, to both Mr. and Mrs. Salsbury.
We conclude the evidence presented at trial reasonably supports the trial court's conclusion that the property in question was donated to both Mr. and Mrs. Salsbury. Because Mr. Salsbury failed to rebut the presumption of community with clear and convincing evidence, the trial court's judgment classifying the land and its improvements as community property, is not manifestly erroneous. See Rosell v. ESCO, 549 So.2d 840 (La.1989).
Chatham Hardware Store and Investment Accounts
Mr. Salsbury contends the trial court erred in classifying the Chatham Hardware Store, the former family business, and several investment accounts as community property. He argues that the store and the accounts are assets purchased with funds received from a personal injury settlement.
Monetary damages due to personal injuries sustained by a spouse during the existence of the community are separate property. LSA-C.C. Art. 2344. Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. LSA-C.C. Art. 2344. When separate and community funds are commingled indiscriminately so that the separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. Kyson v. Kyson, 596 So.2d 1308, 1317 (La.App. 2d Cir. 1991), writ denied, 599 So.2d 314 (La.1992). As previously noted, the spouse claiming that the property is his or her separate property has the burden of rebutting the presumption of community with clear and convincing evidence. LSA-C.C. Art. 2340; Reeves v. Reeves, supra; Dance v. Dance, supra.
When Mr. Salsbury received approximately $32,000 in settlement proceeds which included both community and separate funds,[3] he deposited the entire amount into the parties' joint checking account which usually maintained a balance of approximately $1,000. The parties immediately withdrew $10,000 to pay for a car. Over an eighteen-month period following the settlement, the parties deposited approximately $18,000 of community funds into the account. During that same period, they withdrew approximately the same amount from the account to pay for community expenses. Additionally, they transferred some of the money in the *738 account into their savings account and, eventually, invested $20,000 from the account into joint mutual fund accounts. During the following six years, the money in the mutual fund accounts earned interest which the parties reinvested into the accounts. In 1989, the Salsburys used $10,000 from one of the mutual fund accounts to make the down-payment on the purchase price of the Chatham Hardware Store. They used $10,000 from the other mutual fund account to purchase additional inventory. Both spouses signed the mortgage and promissory note for the balance of the purchase price, and the deed reflects that the property was conveyed to both spouses.
The evidence presented shows that there was substantial indiscriminate commingling of the personal injury proceeds with the community property funds. Due to the substantial commingling, we find that Mr. Salsbury did not prove by clear and convincing evidence that the hardware store and the investment accounts are his separate property. Accordingly, the trial court's judgment finding that Mr. Salsbury failed to overcome the presumption that the Chatham Hardware Store was community property is not manifestly erroneous.
Alternatively, Mr. Salsbury contends that if the Chatham Hardware Store is community property, then the mortgage on that property is a community obligation and, pursuant to LSA-C.C. Art. 2365, he is entitled to reimbursement for the payments remitted after the termination of the community. He contends the trial court erred in failing to award him reimbursement for these payments.
LSA-C.C. Art. 2365 provides in relevant part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
The burden of proof is on the party claiming reimbursement to show that separate funds existed and that those funds were used to satisfy the community obligation. Fountain v. Fountain, 93-2176 (La.App. 1st Cir. 10/07/94), 644 So.2d 733, 744. See also McElwee v. McElwee, 93-1010 (La.App. 1st Cir. 08/17/94), 649 So.2d 975, 978.
In the case before us, the parties stipulated that the balance on the mortgage note had decreased from $37,911.12 to $33,114.98 between the date the petition for divorce was filed and the date the trial on this matter was held. However, despite that stipulation, the source of the funds used to satisfy the obligation is still unclear. The record is devoid of canceled checks or bank statements supporting Mr. Salsbury's claim. Further, Mr. Salsbury never affirmatively stated he used his separate funds to satisfy the obligation. Accordingly, based on this record, we find that Mr. Salsbury failed to meet his burden of proving that his separate funds were used to satisfy this community obligation. Therefore, we find no manifest error in the trial court's failure to reimburse Mr. Salsbury for this claim.

Attorney's Fees
Mr. Salsbury contends the $12,144 attorney fee charged by Mrs. Salsbury's counsel is unreasonable. He asserts that opposing counsel did not present adequate billing statements or documentation detailing the work done, making it impossible to determine whether the total fee is reasonable. In essence, Mr. Salsbury claims the fees billed were never earned and, thus, the trial court erred in determining that the entire fee was a community expense.
The trial court has discretion to decide the amount of reasonable attorney's fees. Teche Bank and Trust Co. v. Willis, 93-732 (La.App. 3d Cir. 02/02/94), 631 So.2d 644, 647. Review of allegedly excessive attorney's fees is tempered with judicial restraint. Drury v. Fawer, 590 So.2d 808, 810 (La.App. 4th Cir.1991), writ denied, 592 So.2d 1304 (La.1992). Courts are not in the business of setting fees. Id. However, if the court factually determines that fees billed were never earned, a reduction in the fees is proper. Id. at 811. Otherwise, absent a showing that the fee charged was clearly excessive, a contractual relationship between an attorney and client should not be altered. *739 Id. at 811. "A fee is `clearly excessive,' if it is `so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibility to the public.'" Teche Bank and Trust Co. v. Willis, supra at 646-47 (quoting Desselle v. Moreauville State Bank, 553 So.2d 1067, 1069 (La.App. 3d Cir.1989), writ denied, 558 So.2d 584 (La.1990)). The trial court's determination of whether a fee is clearly excessive is a factual question which will not be disturbed absent manifest error. Id. at 647.
In the present case, Mrs. Salsbury agreed to pay her counsel $150 per hour for his services, and $50 per hour for his paralegal's services. She also agreed to pay for the expenses he incurred as a result of his representation of her. The trial court reviewed the billing statements. Approximately $2,574 of the $12,144 bill was for expenses incurred. The billing statements accounted for the date and amount of time spent on each activity. The statements provided sufficient detail to determine whether the amount of time spent performing each activity was reasonable, and the statements accurately accounted for the total fee charged. The trial court found the attorney fee was reasonable. After reviewing the record, we cannot say that the trial court's judgment in this regard is manifestly erroneous.

Legal Interest
By his final assignment of error, Mr. Salsbury contends the trial court erred in ordering him to pay interest on the equalizing payment awarded to Mrs. Salsbury from the date of the filing of the petition for partition. He argues that because almost a year lapsed between the trial and the signing of the final judgment, an award of interest from the date of judicial demand rather than the date of final judgment penalizes him.
It is well established that in a suit for accounting and settlement of the community, we award interest from the date of judicial demand. McConathy v. McConathy, 25,542 (La.App. 2d Cir. 02/23/94), 632 So.2d 1200, 1206, writ denied, 94-0750 (La. 05/06/94), 637 So.2d 1052; Webber v. Berry, 609 So.2d 1175, 1179 (La.App. 2d Cir.1992); Oliver v. Oliver, 561 So.2d 908 (La.App. 2d Cir.1990). We find no reason to abandon this rule in the present case.
Moreover, the delays complained of can be partly contributed to Mr. Salsbury's failure to present a judgment to the trial court for its signature. The trial court's ruling on this issue is correct. This assignment lacks merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to Charles Glenn Salsbury.
AFFIRMED.
NOTES
[1] LSA-R.S. 2366 provides in pertinent part: "Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used."
[2] The proffered evidence consisted of testimony and exhibits. The witnesses testified that Mr. Salsbury did not pay any money for the property and that his parents donated it to him. None of the witnesses affirmatively stated that the property was donated to Mr. Salsbury individually. Because of the cumulative nature of this evidence, we pretermit a discussion on whether the trial court erred in excluding it at trial.
[3] Mr. Salsbury's settlement agreement did not specify which portions of the settlement proceeds were allocated to the various community and separate property categories of damages alleged in his petition. However, the evidence shows that Mr. Salsbury lost community wages as a result of the accident and that his worker's compensation insurer did not fully compensate him for that loss. Thus, it is reasonable to conclude that a portion of the settlement proceeds included community proceeds.