728 So.2d 503 (1999)
Roger E. REINHARDT, Plaintiff-Appellant,
v.
Linda Kay Anderson REINHARDT, Defendant-Appellee.
No. 31,174-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
Rehearing Denied February 18, 1999.
*506 Arbour & Aycock by Larry Arbour, West Monroe, Counsel for Plaintiff-Appellant.
Donald L. Kneipp, Linda K. Ewbank, Monroe, Counsel for Defendant-Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
PEATROSS, J.
Plaintiff, Roger Reinhardt, and Defendant, Linda Kay Anderson Reinhardt, both appeal various aspects of this complex community property case. For the reasons expressed, we reverse in part, amend in part and, as amended, affirm.

Facts and Procedure
Linda Kay Anderson Reinhardt (Kay) and Roger Reinhardt (Roger) were married on June 16, 1962. Together, they raised three children. Roger's father died in 1977 and his mother died in 1981, leaving Roger and his sister as their sole heirs.
Roger also had an aunt, Lillian Reinhardt, who died in 1991. Before her death, Roger and Kay moved his Aunt Lillian to the Monroe area to care for her. Aunt Lillian granted Roger a power of attorney and made substantial donations before her death; including $20,000 to pay a mortgage owed by the Reinhardts; approximately $74,400 in checks made out to Roger or Kay or one of the children; and New York Life Insurance policies on the three children which Roger transferred to his own name through the power of attorney. On Aunt Lillian's death, Roger and his sister were left as her sole heirs.
Kay's parents died within months of each other, in 1986 and 1987. Kay and her brother, Wayne, were their sole heirs. Part of Kay's and Wayne's inheritance included immovable property. Kay and Roger borrowed some money and bought Wayne's interest in the land and the loan was repaid with money Kay inherited from her parents.
On September 12, 1994, Roger filed for divorce and the judgment of divorce was signed on March 27, 1996. On June 29, 1995, Kay filed a petition to partition the community *507 property and for reimbursement of separate funds used to pay community debts. Both parties filed detailed descriptive lists. On March 21 and 22, 1996, at a trial on the merits, classification of property, allocation of property and reimbursement issues were decided and a judgment was rendered. Roger was ordered to pay Kay $22,974.41 in equalizing payments. Finding an error in calculation, the trial court increased Roger's equalizing payment to $111,100.06. Roger and Kay both appeal parts of the judgment, raising classification,[1] allocation, reimbursement and valuation issues. Roger additionally contests the date interest should begin to accrue on the equalizing payment.

Classification of Property as Community or Separate
Generally, property of married persons is either community or separate. La. C.C. art. 2335. There is a heavy presumption that things in the possession of a spouse during the marriage are community, but either spouse can rebut this presumption and may prove that the things are separate property. La. C.C. art. 2340. Separate property includes that which is acquired by a spouse with separate things and property acquired by a spouse by inheritance or donation to him individually. La. C.C. art. 2341. To prove that the thing is separate, the spouse asserting separateness has the burden of proving that the property is separate by proof that is fixed, clear, positive and legally certain. Tolar v. Tolar, 28,202 (La.App.2d Cir.4/3/96), 671 So.2d 1234; Succession of Brewster, 27,463 (La.App.2d Cir.11/1/95), 663 So.2d 551, writ denied, 95-3118 (La.2/16/96), 667 So.2d 1059. The presumption of community may be rebutted by parol evidence, but the contradicted testimony of a litigant is insufficient to overcome this presumption. Reeves v. Reeves, 607 So.2d 626 (La.App. 2d Cir.), writ denied, 608 So.2d 1010 (1992).
When separate funds are used for the acquisition, improvement or benefit of community property, the spouse whose separate funds were used, on the termination of the community, is entitled to one-half of the amount used. La. C.C. art. 2367.
The classification of property is a factual determination which cannot be overturned by an appeal court unless it appears that the trial court's conclusion is clearly wrong or manifestly erroneous. Purcell v. Purcell, 29,663 (La.App.2d Cir.6/23/97), 697 So.2d 728; Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court is not in "manifest error" or "clearly wrong" if it comes to a reasonable conclusion. Stobart v. State, 617 So.2d 880 (La.1993). If conflicts exist in the testimony and the trial court made "reasonable evaluations of credibility and reasonable inferences of fact," then the appellate court should not disturb the judgment even if it feels its "own evaluations and inferences are more reasonable." Id.

Roger's inheritance from his parents
The mere mixing of separate and community funds in a community account does not by itself make the funds community. Mertens v. Mertens, 96-391 (La.App. 3d Cir.10/9/96), 688 So.2d 1148; Thibodaux v. Thibodaux, 577 So.2d 758 (La.App. 1st Cir. 1991); Succession of Norwood v. Norwood, 519 So.2d 338 (La.App. 2d Cir.), writ denied, 521 So.2d 1169 (1988). However, when separate funds are commingled with community funds indiscriminately and to the extent that separate funds are no longer capable of identification and it is impossible to trace the origin of the funds, then all of the funds are considered community. Id. Further, there is a "presumption that withdrawals from an account in which community and separate funds are commingled are presumed to come first from separate funds." Cutting v. Cutting, 625 So.2d 1112 (La.App. 3d Cir.1993), writ denied, 631 So.2d 453 (1994).
Roger appeals the trial court's decision that the amounts he inherited from his parents were not adequately traced and were commingled with community funds to the extent that they became community assets. He argues that he traced the inherited funds and that the funds were used for community *508 obligations; and, as such, he is entitled to reimbursement of one-half of the separate funds.
Roger showed that he inherited $73,606.94 from his parents; of that amount $61,511.95 came from the sale of his parents' home and $12,094.99 was cash from his parents' various accounts. Additionally, Roger showed that soon after he inherited the funds, he purchased a $100,000 certificate of deposit ("CD"). The record shows that the CD was purchased with money from a combination of sources: Roger's inheritance, $10,000 cash already in the account from which the CD was purchased and money from the sale of the parties' community home. It is not evident what amount came from the proceeds of the sale of the community home and what amount came from Roger's inheritance. The trial court, therefore, was not manifestly erroneous in finding that Roger indiscriminately commingled his separate money with community funds and did not adequately trace the separate funds. The trial court was entitled to deny this reimbursement claim.

Roger's inheritance from his Aunt Lillian
Kay appeals the trial court's ruling that funds in accounts # 264850-4 and # 454415-3 were a combination of community and separate funds, that the separate funds were adequately traced and subtracted from the total in the accounts and that Kay was entitled to reimbursement for the remaining portion of the money in the accounts which was found to be community property. Kay argues that the funds were commingled and Roger did not adequately trace his separate funds, with the result that both accounts became community property. Additionally, Kay argues that Roger's motorcycle, which was purchased with funds from these accounts, is community property and she is entitled to one-half of the proceeds from the sale of the motorcycle.
Roger placed inherited money and interest and dividend income into two Central Bank accounts, # 264850-4 and # 454415-3. Roger acknowledges that the interest and dividend income from these accounts is community. The amount of separate, inherited funds placed into the accounts is comprised of a $20,000 cash inheritance, $20,195 in municipal bond collection receipts, $10,000 in municipal bond redemptions and $4,995 from a matured bond, totaling $55,190. During the community property regime, few withdrawals were made. However, with the exception of $2,343.04 to pay for a motorcycle, there is no proof of the purpose of these withdrawals other than Roger's written notations on the side stating that the withdrawals offset the credits. There was no evidence presented to explain the offset of the credits. Accordingly, it is presumed that the withdrawals were from Roger's separate funds. The withdrawals totaled $4,887.25.[2] The trial court was in error in not subtracting that amount from the total of Roger's separate funds. When his separate funds are reduced by that amount, the total amount of the separate funds in the accounts is $50,302.75. Subtracting his separate funds from the total amount in the accounts,[3] we find that Kay is entitled to a one-half interest in $81,737.35 less $50,302.75, or $31,434.60. We, therefore, amend the trial court's decision that Kay is entitled to one-half of $27,143.35, to finding that Kay is entitled to one-half of $31,434.60, or $15,717.30.
The total amount of the withdrawals was designated as separate funds, including that amount which Roger has proven was used to buy his motorcycle. Since separate funds were used to pay for the motorcycle, the motorcycle is Roger's separate property and Kay, therefore, has no interest and is not entitled to reimbursement. See La. C.C. art 2341, comment (c).

Kay's inheritance
Roger appeals the trial court's ruling that Kay adequately traced $118,961.61 of the $194,516.40 that she inherited from her *509 parents. Roger argues that these funds were not adequately traced. He further argues that a piano purchased with these funds is Kay's separate property for which he owes no reimbursement.
Kay traced her inheritance from her mother's accounts into two of her accounts. The first was # XX-XXXX-X in Ouachita National Bank, into which she made two deposits in 1987, one for $9,375.19 and one for $17,556.93. From this account Kay withdrew $8,500, which Roger admits were Kay's separate funds, to purchase a piano for the church, a community debt at issue in this appeal; $75,554.71 to pay off the loan incurred when Kay purchased her brother's one-half of the land inherited by them from their parents, which was a community debt and is not at issue in this appeal; and $14,441.33, which Kay transferred into her second account at issue. The second account was # XX-XXXX-X, into which the following amounts of separate funds were deposited in 1987: $8,750; $10,750; $14,595.81 ($14,441.33 of which was transferred from her other account); $27,872.48; $33,356.73; $43,594.99; $1,029.78; and $4,845.62. Various checks were issued for unknown reasons from this account, and additional deposits from unknown sources were also made into this account. In 1987, two major withdrawals were made, $17,281.03 into a savings account and $58,000 into a CD.
Though Kay admirably traces these funds through 1987 into a savings account and a CD, the record shows no evidence of tracing of funds after that date. Notably, the original accounts, savings account and CD are all now closed. In addition, in 1993, Kay and Roger separated. At this time, Kay withdrew all the money from the couple's accounts in Louisiana and placed them in accounts in Mississippi and Arkansas. When the couple reconciled, Kay returned the money to Louisiana and purchased a CD in Roger's name and two CD's in her name. In her detailed descriptive list and in her post-trial brief, Kay lists the CD's as community assets. As such, this tracing is inadequate to show that the money did not subsequently go into other community accounts and become indiscriminately commingled. The trial court was manifestly erroneous in determining that these funds were adequately traced and used to pay community obligations or purchase community assets; and, therefore, we reverse the trial court's ruling that Kay is entitled to reimbursement for those funds which were not adequately traced.
Kay is entitled to reimbursement of one-half of community assets which were proven to be purchased with her separate funds, i.e., those that were adequately traced. According to both Kay's and Roger's briefs, a piano for the church was purchased at a cost of $8,500. Kay had the authority to make this donation to the church in the name of the couple and has proven that the piano was purchased with her separate funds. See La. C.C. art. 2349. Kay, therefore, is entitled to $4,250, which is one-half of the purchase price of the piano.

Gifts from Aunt Lillian
Gifts which are given to a spouse individually are his separate property. La. C.C. art. 2341.[4] Roger argues that $20,000 given to him by Aunt Lillian was meant for him individually and, as such, is his separate property. The trial court held that the money was community.
The intent of the donor controls or determines the identity of the donee or donees. Purcell v. Purcell, supra; Allbritton v. Allbritton, 561 So.2d 125 (La.App. 3d Cir.), writs denied, 565 So.2d 445, 454 (1990). If the donor is deceased, then the intention of the decedent is inferred from the relation of the parties and all the facts and circumstances of the case. Purcell v. Purcell, supra. The nature of the property, including the manner in which the gift was used, is relevant in determining the intent of the donor. Id.
Since Aunt Lillian was deceased, she could not testify as to who her intended donee or donees were. Roger testified that Aunt Lillian intended the $20,000 to be a gift to him individually. Dale Williams, a loan officer, *510 testified that Roger paid $20,000 on a community loan from money given by Aunt Lillian. Mr. Williams never spoke to Aunt Lillian and does not know if the money was intended as a gift, or to whom it was given.
The record shows that the money was used to pay off a community obligation, i.e., a mortgage on community property. The money was used to benefit the community and, according to both Roger and Kay, was given with the idea that it would be used to pay off a community debt. The record further shows that Aunt Lillian had a positive relationship with both Roger and Kay. Roger and Kay moved Aunt Lillian to the area to care for her, a responsibility that, according to Kay's testimony, fell predominately on her. Furthermore, Roger, by not paying a gift tax on the $20,000, purported that it was a community gift to avail himself of favorable tax laws.[5]
Based on the relationship between Aunt Lillian and both Roger and Kay, and the uncontradicted testimony that the money was used to pay off a community debt, the trial court could reasonably conclude that the $20,000 was intended as a donation to both Roger and Kay and, as such, was community and Roger is not entitled to any reimbursement.
Roger also argues that checks, totaling $74,000, written by Aunt Lillian to either him or Kay or one of the children, were gifts from Aunt Lillian to him individually. He testified that the checks were written to other family members for the purpose of estate planning and so he could avail himself of favorable gift tax laws. Roger further testified that each payee would endorse the check and give it to him. In the alternative, he argues that the checks were gifts to him from each individual family member.[6]
None of the children testified as to their intent in endorsing the checks. Kay reported that she endorsed the checks, giving them to Roger so that he could deposit them as he saw fit. Kay further stated that her intent was not to donate the money to Roger. Roger's only proof of his family members' intent is his own testimony. Kay disputes Roger's account, claiming that Aunt Lillian and the children intended that the money be donated to the community. The court could reasonably find that Aunt Lillian's donative intent was to give the money to both Roger and Kay; and, as for the money from the checks written out to the children, the court could reasonably find the children's donative intent was identical to Aunt Lillian's. As the trial court reasonably found that Aunt Lillian had in the past given large sums of money to her only nephew and his wife, it is reasonable to find that additional money was also given to both of them, as opposed to Roger individually. Absent additional proof of the intent of the donors, Roger's contradicted testimony was insufficient to overcome the presumption that the money was community. Reeves v. Reeves, supra.
Additionally, Roger offered no evidence as to how the money was used. He only showed that the money was received and deposited into a community account. Even if Roger had shown that the donors intended to donate the money to him individually, he did not trace the money and, therefore, would not be entitled to reimbursement.

New York Life Insurance Policies on the Children
A principal can contractually confer authority to another person, a mandatary, to transact one or more affairs for the principal. La. C.C. art. 2989. In order for the principal to confer the authority to alienate, acquire, encumber or lease a thing, the principal must do so expressly. La. C.C. art. 2996. The contract is not required to be in any particular form, but when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form. La. C.C. art. 2993.[7] As between the principal and the mandatary, the mandatary can bind the principal *511 to the limit of the actual authority given by the mandate by the principal. La. C.C. art. 3020; Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864.
Kay appeals the trial court's decision that three New York Life Insurance policies in the three children's names were Roger's separate property. Aunt Lillian purchased these policies in 1988, listing herself as owner; pursuant to power of attorney, Roger transferred them to his own name in 1991 (before Aunt Lillian's death). Kay argues that since he did not declare them his separate property in the act of transfer, the policies were given to the community and she is entitled to a one-half interest.
Aunt Lillian gave Roger power of attorney in 1987. The document gave him authority to "sell, transfer and convey or to mortgage and affect all or any part(s) of the real, personal or mixed estate." The document further states that Aunt Lillian "agrees to ratify and confirm all and whatsoever the said Agent [Roger] shall lawfully do or cause to be done." As such, Roger had the authority to transfer Aunt Lillian's property, either gratuitously or onerously.
Roger, as her mandatary, gratuitously transferred the life insurance policies in the children's names to himself. In doing so, he bound Aunt Lillian to this transfer and further bound third parties. La. C.C. art. 3020; Barrilleaux v. Franklin, supra. According to Roger's testimony, when he transferred the policies, he did so to himself. This was Aunt Lillian's action because of the power of attorney. The trial court was not manifestly erroneous in determining that the policies were Roger's separate property. The policies were donated to Roger individually and are his separate property. Accordingly, Kay does not have an interest in the policies, their cash values or the loans receivables.

Mobile Home
A certificate of title constitutes prima facie proof that the person listed is the owner. Ford Motor Credit Co. v. Soileau, 323 So.2d 221 (La.App. 3d Cir.1975). The certificate of title is not conclusive proof, as ownership can be different than that which appears in the title, and proof showing that a different individual than the one listed on the title is the owner is admissible. Id.; See also Soileau v. Soileau, 95-578 (La.App. 3d Cir.11/2/95), 664 So.2d 551.
A spouse's undivided interest in property otherwise classified as separate property remains his separate property regardless of the acquisition of other undivided interests in the property during the existence of the legal regime. La. C.C. art. 2341.1 A. In property in which an undivided interest is held as community property and an undivided interest is held as separate property, each spouse owns an undivided one-half interest in that portion of the interest which is community and a spouse owns an undivided interest in that portion of the interest which is separate. La. C.C. art. 2341.1 B.
Kay appeals the trial court's decision that the mobile home was Roger's separate property. The trial court also found that Roger bought, with community funds, his sister's one-half interest in the mobile home and owed Kay reimbursement for one-fourth the value of the home.
The certificate of title to the mobile home showed that Roger was the owner; the evidence showed otherwise. Kay admitted that the mobile home was paid for by Aunt Lillian. Furthermore, on Aunt Lillian's death, Roger and Kay paid Roger's sister for her interest in the mobile home. It is reasonable for the trial court to find that the mobile home originally belonged to Aunt Lillian. On Aunt Lillian's death, Roger and his sister each inherited a one-half interest in the mobile home. Roger and Kay purchased his sister's interest in the mobile home with community funds, thus creating distinct separate and community undivided interests under art. 2341.1 B. The trial court was manifestly erroneous in determining that the mobile home was Roger's separate property.
The trial court originally allocated the mobile home to Roger. This court affirms the allocation of the property to Roger. Roger, therefore, is allocated an asset which is one-half his separate property and one-half a community asset. The mobile home is *512 worth $10,000; subsequently, the community interest in the mobile home totals $5,000.

Valuation of Property
Generally, the valuation of community assets is determined at the trial on the merits. La. R.S. 9:2801(2). A trial court is not required to accept at face value a spouse's valuation of assets or debts. Barrow v. Barrow, 27,714 (La.App.2d Cir.2/28/96), 669 So.2d 622, writs denied, 96-1057, 96-1072 (La.6/21/96), 675 So.2d 1080. If property increases in value after the divorce and as a result of contributions by one spouse only, then it is within the discretion of the court to value the property at the date of the divorce as opposed to the date of the partition. Barr v. Barr, 613 So.2d 1159 (La. App. 5th Cir.1993). The community ends retroactively from the date of the filing of the petition for divorce. La. C.C. art. 159.

Lincoln National Life Insurance Policy
Kay appeals the trial court's decision to value Roger's life insurance policy through Lincoln National Life Insurance Company at the time of the separation as opposed to the time of the trial on the partition.
Mr. James Neill, an employee of Lincoln National, testified that on September 5, 1994 (12 days before the filing of the divorce petition), this policy had a value of $17,206.04. By the date of the trial, the policy was worth $22,475.90. Mr. Neill testified that the increase in value of the policy was the result solely of payroll deductions, not of interest.
It is uncontradicted that the premiums paid after the filing of the petition were from Roger's separate income. As such, the increase in the value of the policy is after the termination of the community and from funds in which Kay has no interest. It was in the trial court's discretion to value the policy as of the date of the separation; the ruling was not manifestly erroneous and is therefore affirmed.

Capital Bank Account
Kay appeals the trial court's valuation of Capital Bank Account # XXXXXXX at $1,009.48, which was the amount in the account at the time of the termination of the community. Kay argues that at the time of the trial, the account, which was found to be community, had a balance of $2,985.93. Kay argues that since the account represents interest from community CD's, she is entitled to one-half interest in the account, valued at the time of the partition. Roger counter-argues that the increase is due from interest on a community CD in his name, while the interest on the community CD in Kay's name was used by Kay after the termination of the community.
During a previous separation, Kay removed substantial amounts of the couple's funds from banks in Louisiana, depositing them into accounts in a Mississippi bank and an Arkansas bank. When the couple reconciled, Kay withdrew the money and purchased several CD's, one in her name for $87,000 and one in Roger's name for $87,000. In both her detailed descriptive list and her post-trial brief, Kay concedes that the CD's represent community assets. During the time between the divorce and the partition, the trial court issued a preliminary injunction preventing Roger or Kay from disposing of, alienating or encumbering any community property and from withdrawing, converting or disposing of any funds in their names. The trial court further allowed an exception to this order giving Kay the right to use any interest income from the CD's in her name. Roger was not given access to similar interest income. Instead, the interest from the CD in Roger's name went into Capital Bank Account # XXXXXXX.
The trial court did not abuse its discretion in valuing the Capital Bank Account # XXXXXXX at $1,009.48. The increase in the account was due to interest income from the CD in Roger's name, to which he had no access; Kay had previously had access to similar interest income and was not entitled to the increase. See Barr v. Barr, supra. We affirm the trial court's determination of the value of the account.

Reimbursement
The legal regime of community property is terminated by the judgment of divorce. La. C.C. art. 2356. An obligation incurred during the existence of the community for the common interest of the spouses or for the interest of the other spouse is a community *513 obligation. La. C.C. art. 2360. An obligation is separate when incurred prior to marriage, during the community, though not for the common interest of the spouses or for the interest of the other spouse, or when incurred after termination of a community property regime. La. C.C. art. 2363. If community property has been used to satisfy a separate obligation of an individual, the other individual is entitled to reimbursement upon the termination of the community, for one-half of the amount the property had at the time used. La. C.C. art 2364.

Kay's medical bills
Medical services rendered to a party during the existence of the community are a community debt. La. C.C. art. 2361; Credit Service Corp. v. Dickerson, 243 So.2d 827 (La.App. 2d Cir.1971). Once the community has been dissolved, however, neither party can contract a community debt. Walton v. Walton, 490 So.2d 1093 (La.App. 3d Cir. 1986).
Roger appeals the trial court's decision to order Kay to reimburse him for one-fourth of the bill for the medical treatment which Kay underwent after their divorce. Roger argues that he is entitled to reimbursement for one-half of the cost since the bill was paid for with community funds.
Kay underwent medical treatment after the termination of the community, creating a separate obligation. The ensuing debt was admittedly paid for with community funds. Roger is entitled to one-half of the funds used to pay Kay's separate debt. Therefore, the decision of the trial court awarding Roger one-fourth of the funds is manifestly erroneous. This court amends the trial court's decision and awards Roger $986.98, representing one-half of the cost of the medical expenses.

Expenses paid from Kay's separate funds
After the termination of the community property regime, the provisions governing co-ownership apply to former community property. La. C.C. art. 2369.1. A co-owner who has incurred necessary expenses, expenses for ordinary maintenance and repairs or necessary management expenses paid to a third person, concerning the co-owned, former community property, is entitled to reimbursement from the other co-owner. La. C.C. art. 806. If the co-owner who incurred the expenses had the enjoyment of the thing, his reimbursement shall be reduced in proportion to the value of the enjoyment. La. C.C. art. 806. In addition, co-owners share the fruits of the thing held in indivision. La. C.C. art. 798.
Kay appeals the trial court's denial of her claim for reimbursement of one-half of expenses she incurred relative to a community home at 100 N. Inglewood. Those expenses totaled $816.86. The trial court found that Kay had been allowed to use community funds to improve the house to suit her needs and taste. Part of the expenses for which Kay is seeking reimbursement is the refund of $450 to renters when she decided to move into and enjoy the house which she co-owned with Roger. It is not manifestly erroneous for the trial court to deny Kay reimbursement of expenses when Kay had the enjoyment of the thing which she and Roger co-owned.
Kay appeals the trial court's refusal to award her one-half the rental income from a community-owned mobile home. Kay alleges that the mobile home was rented for $175 per month for 18 months, yielding a total rental income of $1,575. The renter was Roger's nephew who, according to Roger, paid Kay rent for two months until she evicted him. Roger subsequently moved the mobile home and collected five months' rent from his nephew. Since this was a co-owned mobile home, the co-owners are each entitled to one-half of the fruits. As such, it was manifestly erroneous for the trial court not to award one-half of the total rent revenue to each co-owner. Kay received two months' rent, or $350; Roger received five months' rent, or $875; the total revenue was $1,225. Each co-owner should receive $612.50. Since Kay has already received $350, Roger owes her an additional $262.50 in rental income.[8]

*514 Money Kay Withdrew After the Separation

Kay is appealing the trial court's ruling that she owes Roger reimbursement for $2,000 and $6,000 that she withdrew from a community checking account.[9] The $2,000 check was dated August 29, 1994, and the $6,000 check was dated September 9, 1994. Both checks were written out to cash, with a notation of "trip" on the $2,000 check. The community was retroactively terminated on September 12, 1994. Kay had a duty to show that the money went to benefit the community, not to promote her self-interest. See also Brown v. Brown, 28,441 (La.App.2d Cir.8/21/96), 680 So.2d 1203, writs denied, 96-2518, 96-2562 (La.12/6/96), 684 So.2d 939, 940. Additionally, any of the funds spent subsequent to the termination of the community were spent on separate obligations. Kay offered no evidence as to how the monies were used. It was not manifestly erroneous for the trial court to rule that Roger was due reimbursement for one-half of the amounts withdrawn.

Allocation of Property
In allocating community property to the spouses of the community, the court has great discretion and may divide a particular asset or liability equally or unequally or allocate it in its entirety to one of the spouses. La. R.S. 9:2801(4)(c); Barrow v. Barrow, supra. The court shall consider the nature and source of the asset, the economic condition of each spouse and any other circumstances that the court deems relevant. La. R.S. 9:2801(4)(c). The court must ultimately divide the property so that each spouse receives property of an equal net value. La. R.S. 9:2801(4)(c); Kambur v. Kambur, 94-775 (La.App. 5th Cir.3/1/95), 652 So.2d 99. In order to avoid an unequal net distribution, the court may order the payment of an equalizing sum of money. Id.
In the trial court's original judgment, it awarded Kay an equalizing payment of $22,974.41, in part, so as not to render Kay "cash poor." In its amended judgment, the equalizing payment was increased, due to a mathematical error, to $111,100.06. Roger appealed this, arguing that the court was required to give each spouse property of equal net value.
The trial court took all relevant factors into consideration in allocating the property, as well as the fact that certain properties were income-producing. Admittedly, it might be an abuse of discretion to order a large equalizing payment of $111,100.06 while there is property which can be allocated to lower that payment. As a result of this appeal, however, we have determined that the correct equalizing payment, without reallocation of any property, is $58,177.85. Therefore, based on the same considerations used by the trial court, we have determined that it is equitable to order an equalizing payment of $58,177.85 and not reallocate property.

Legal Interest
Roger is appealing the trial court's ruling that he owes legal interest on the equalizing payment owed to Kay from the date of judicial demand. He argues that, pursuant to Preis v. Preis, 95-352 (La.App. 3d Cir.12/6/95), 664 So.2d 860, writ denied, 95-3096 (La.2/28/96), 668 So.2d 368, he is only liable for interest from the date of judgment. In Preis, the supreme court denied the writ, stating that the result was correct. Id. Roger argues that the result to which they refer is the date interest begins to accrue. Kay counter-argues that the result to which the Court refers is that legal interest is due. In Preis, the appellee argued that the lower courts could not assess interest on an equalizing payment because his spouse neither requested nor was awarded *515 interest. Id. The first circuit stated that interest should be assessed. Id. Subsequent to Preis, this circuit has held that while, generally, in a suit for accounting and settlement of the community, interest is awarded from the date of judicial demand, this is not a hard, fast rule, and a case-by-case analysis based on principles of equity and fairness may show that awarding legal interest from the date of filing is unfair. Camp v. Palmer, 30,558 (La.App.2d Cir.5/13/98), 711 So.2d 861; see also Salsbury v. Salsbury, 27,062 (La. App.2d Cir.6/21/95), 658 So.2d 734.
This case is not one where awarding legal interest from the date of judicial demand is unfair. In Camp, more than nine years had lapsed from the filing of the petition and the judgment of partition. Id. In the case at hand, Kay filed the petition to partition the community on June 29, 1995; and a trial on the merits was conducted on March 21 and 22, 1996, less than a year later. Furthermore, as a result of this appeal, the amount of Roger's equalizing payment has decreased. This case is not one where the general rule of awarding interest from the date of judicial demand would be unfair; therefore, the trial court's ruling of when interest begins to accrue is affirmed.

Summary
We affirm the following trial court rulings: (1) Roger did not adequately trace his inheritance from his parents and, therefore, is owed no reimbursement for the amounts; (2) the piano purchased by Kay with her separate funds gave rise to a community debt and she is owed reimbursement; (3) the $20,000 check from Roger's Aunt Lillian was a gift to the community and Roger is owed no reimbursement; (4) the $74,400 in gifts from Aunt Lillian to members of the family was a gift to the community and Roger is owed no reimbursement; (5) the trial court's allocation of property is appropriate, given the circumstances of the case; (6) legal interest on the equalizing payment is due from the date of judicial demand; (7) the $6,000 check and the $2,000 check which Kay made out to cash were not properly traced to show that the funds were used for community obligations and Kay owes reimbursement of the funds; (8) the trial court correctly valued the cash value of the Lincoln National Life Insurance policy; (9) the three New York Life Insurance policies made out in the children's names were proper donations to Roger and are his separate property; (10) the valuation of Capital Account # XXXXXXX was proper; (11) the motorcycle sold by Roger was his separate property; and (12) Kay is not owed reimbursement for the use of her separate funds to pay for improvements on 100 N. Inglewood.
We amend the following trial court rulings: (1) Kay's post-termination medical bills, which were paid for with community funds, are her separate obligation, and Roger is owed $986.98, representing one-half of the expenses, as opposed to one-fourth; (2) Roger adequately traced his separate, inherited property to Central Bank Accounts # 264850 and # 454415-3, but amounts withdrawn from the accounts were presumed to be separate; thus, his separate funds amounted to $50,302.75 and, subsequently, the community funds in the account amounted to $31,434.60, and Kay is owed $15,717.30, representing one-half of the community funds; and (3) the 1988 16 × 80 mobile home is one-half Roger's separate property and one-half a community asset, the community interest totaling $5,000.
We reverse the trial court rulings on the following issues and find that: (1) Kay did not properly trace her inheritance from her parents; and, accordingly, she is not owed reimbursement for the entire amount, only for those funds used to buy Wayne's portion of her parents' land ($37,777.36, which is one-half of $75,554.71) and to purchase a church piano ($4,250, which is one-half of $8,500); (2) the Mitsubishi television is a $300 community asset, for which Kay is owed reimbursement of one-half; and (3) Kay is entitled to one-half of the rental income received from Roger's nephew; and, taking into consideration amounts already received, Roger owes her $262.50 in rental income.
In regard to the assets assessed to Roger, this court values the community funds in accounts # 264850-4 and # 454415-3 at $31,434.60 (as opposed to $26,547.35). In addition, pursuant to a stipulation, the Mitsubishi television was declared a community asset *516 valued at $300, for which Roger was assessed. In addition, the 1988 16 × 80 mobile home is one-half a community asset, with the community portion totaling $5,000. Consequently, the value of community assets received by Roger is increased from $535,290.52 to $545,477.77.
The equalizing payment is calculated as follows:

Value of community property
 allocated to Roger $545,477.77
Value of community property
 allocated to Kay 501,558.98
 ___________
 Difference: $ 43,918.79
 One half of difference, owed to Kay $ 21,959.40
 Reimbursements owed to Kay
(1) 112 Glenwood trailer 230.48
(2) 119 Fennell 2,060.99
(3) Pace Arrow 184.68
(4) Kay's inheritance applied to
 purchase of Wayne's property 37,777.36
(5) Piano 4,250.00
(6) Rental on trailer 262.50
(7) One half of difference
 from allocation 21,959.40
 ___________
 TOTAL: $ 66,725 41
Reimbursements owed to Roger
(1) Farm Bureau bills $ 656.32
 843.00
(2) Farm income and expenses 503.48
(3) One-half of $2,000 check 1,000.00
(4) One-half of $6,000 check 3,000.00
(5) Perry & Sons bill 357.78
(6) Kay's medical expenses 986.98
(7) Kay's mother's diamond 1,200.00
 ________
 TOTAL: $ 8,547.56
 Total:
 Money owed to Kay by Roger: $ 66,725.41
 Money owed to Roger by Kay: 8,547.56
 ________
 EQUALIZING PAYMENT:$ 58,177.85

Decree
The judgment is therefore amended in accordance with the summary given above. It is ordered, adjudged and decreed that Plaintiff, ROGER REINHARDT, pay unto Defendant, LINDA KAY ANDERSON REINHARDT, an equalizing payment of Fifty-eight thousand, one hundred seventy-seven & 85/100 ($58,177.85) dollars, together with legal interest thereon from date of judicial demand until paid.
Costs are assessed equally to the parties.
REVERSED IN PART, AMENDED IN PART AND, AS AMENDED, AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., and BROWN, STEWART, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] At oral arguments, Roger's attorney stipulated that the Mitsubishi television valued at $300, one of the assets at issue on appeal, was, in fact, a community asset. As such, Kay is entitled to $150, representing one-half of the value of the television.
[2] In addition, $10.64 was withdrawn for checks, which benefitted the community account and, as such, was community, and $30,000 was transferred between the accounts, which did not affect the nature of the amount in the combination accounts.
[3] The total amount in the accounts includes Roger's separate funds plus interest and dividend income from the separate funds, which Roger acknowledges are community funds.
[4] All monies given by Aunt Lillian were valid donations inter vivos, as money is a corporeal movable and the gifts of the checks were accompanied by a real delivery. La. C.C. art. 1539.
[5] 22 USCA § 2503.
[6] La. C.C. art. 1539.
[7] The validity of the transfer of the insurance policies was not raised. Roger transferred the life insurance policies using the form provided by the company. This transfer is valid; the form requirements for donations inter vivos are not applicable to the donation of life insurance policies. La. R.S. 22:1521.
[8] Kay additionally appealed the trial court's denial of her claim for reimbursement of one-half of the cost in maintaining the mobile home at 112 Glenwood and her claim for reimbursement of one-half of the costs in readying the community house on 119 Fennell for sale. A review of the record shows that in its judgment, the trial court ordered Roger to reimburse Kay for these expenses. The trial court did not deny these claims; therefore, they are not being considered by this court.
[9] The trial court referred to the $6,000 check in two places in its reasons for judgment, once referring to it as being withdrawn during a previous separation, and once to it being withdrawn immediately before the separation, which gave rise to the divorce. The record shows that a $6,000 check was withdrawn on September 9, 1994, resulting in the conclusion that the trial court's ruling referred to that withdrawal.