DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-124

MICHAEL GLASS

VERSUS

PATRICIA M. GLASS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES,  NO. 213,870
HONORABLE HARRY F. RANDOW,
DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Michael G. Sullivan, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

Jeffrey H. Thomas
P.O. Box 548
Natchitoches, LA 71458-0548
Counsel for Defendant-Appellant:
    Patricia M. Glass

Terry Aubin
3600 Jackson St., Ste. 107
Alexandria, LA 71303
Counsel for Plaintiff-Appellee:
    Michael Glass

**PAINTER, Judge.**

Patricia Glass appeals the trial court's judgment partitioning the community of acquets and gains formerly existing between her and Michael Glass. Michael Glass answers the appeal.

## FACTS AND PROCEDURAL HISTORY

Michael and Patricia Glass were married on February 2, 1997, in Alexandria, Louisiana. Michael filed a petition for divorce on July 21, 2003, praying for a partition of the community property and debts. A judgment of divorce was entered on February 9, 2004. The partition was heard in November 2005. The trial court gave extensive written reasons and entered judgment as follows:

> ORDERED that judgment is rendered allocating to Patricia Glass the following community assets:

1. A certain piece, parcel or lot of ground, together with all buildings and improvements thereon located, and all rights, ways and privileges thereunto appertaining, being, lying and situated in Alexandria, Rapides Parish, Louisiana, and being more particularly described as Lot Nineteen (19) of the Riverwynd Subdivision, being a subdivision of Lot Four (4) of the Culpepper & Hundley Subdivision of Flowerton Plantation in Section 23, Township 3 North, Range 1 West, Rapides Parish, Louisiana, all as is more fully shown by official plat of survey recorded at Plat Book 17, Page 108, Records of Rapides Parish, Louisiana;

2. A certain piece, parcel or lot of ground, together with all buildings and improvements thereon located, and all rights, ways and privileges thereunto appertaining, being, lying and situated in Alexandria, Rapides Parish, Louisiana, and being more particularly described as Lot Twenty (20) of the Riverwynd subdivision, being a subdivision of part of Lot Four (4) of the Culpepper & Hundley Subdivision of Flowerton Plantation in Section 23, Township 3 North, Range 1 West, Rapides Parish, Louisiana, all as is more fully shown by official plat of survey recorded at Plat Book 17, Page 108, records of Rapides Parish, Louisiana;

3. Hibernia account 77374216;

1

4. Those monies already received by her from the sale of the parties' airplanes and related business;

5. That certain 1993 Buick automobile in her possession; and

6. The miscellaneous funds remaining in the bank account(s) of Patricia Glass; it is further

ORDERED that judgment is rendered allocating to Michael Glass the following community assets:

1. A certain piece, parcel or tract of land, together with all buildings and improvements located thereon, and all rights, ways and privileges, thereunto appertaining, being, lying and situated in Rapides Parish, Louisiana and being more particularly described as follows, to-wit:

   Lot Two (2) of Chester Place, as per plat thereof recorded in Plat Book 2, Page 129, of the records of Rapides Parish, Louisiana; subject to restrictions servitudes, right-of-ways and outstanding mineral rights of record affecting the property;

2. A certain piece, parcel or tract of land, together with all buildings and improvements located thereon, all rights, ways, privileges, thereunto appertaining, being, lying and situated in Parish of Rapides, State of Louisiana and being more particularly described as follows:

   Part of Lot Two (2), Square Two (2) of Wheadon-Powers Subdivision, as per plat thereof recorded in Plat Book 2, Page 128, records of Rapides Parish, Louisiana being more fully shown within dark lines on Certificate of Survey by Daniel D. Sandefur dated September 16, 1977, attached to Act of Cash Sale dated September 29, 1977 filed and recorded September 30, 1977, Conveyance Book 915, Page 796, records of Rapides Parish, Louisiana;

3. The US savings bonds in his possession;

4. The Ameritrade account in his name;

5. The entirety of those funds presently maintained in the trust account of The Aubin Law Firm, a Professional Corporation;

6. Red River Bank account 2067171;

7. Red River Bank account 2067189;

8.      Hibernia account 773104190;

9.      Those monies already received by him from the sale of the parties' airplanes and related business; and

10.     First Colony Life Insurance Company policy number 2926311; it is further

ORDERED that the parties shall execute all documents necessary to implement the allocation of assets set forth above; it is further

ORDERED that the following community liabilities are allocated to Michael Glass:

1.      Debt secured by mortgage and owed to Red River Bank, account number 1000258402;

2.      Debt owed to Hibernia Bank, account number 85742221; and

3.      Debt owed to Red River Bank, account number 1000254803; it is further

ORDERED that the parties' respective reimbursement claims totaling $256,530.33 for Michael Glass and $301,198.49 for Patricia Glass; it is further

ORDERED that Patricia Glass owes Michael Glass a cash equalizing sum for the difference in net assets allocated, and that cash equalizing sum is $41,384.00;

Accordingly, considering the net reimbursement owed and also considering the cash equalizing sum owed, all as mentioned above, it is further

ORDERED that single money judgment is hereby rendered herein, representing net reimbursement owed and also representing the cash equalizing sum, in favor of Patricia Glass and against Michael Glass in the principal sum of $3,284.16 plus legal interest thereon from August 22, 2006 until paid in full; it is further

ORDERED that all other claims of each of the parties regarding assets and debts and also regarding reimbursement are denied; . . . .

Neither party disputes the trial court's apportionment of the assets or the conclusion reached as to the amount of the cash equalizing payment due as a result of the unequal apportionment of those assets. The only matters before this court

3

concern the reimbursement claims of the parties. Patricia appeals the trial court's rulings regarding certain reimbursement claims. Michael answers the appeal also disputing the trial court's treatment of certain reimbursement claims and the trial court's denial of his claim that Patricia mismanaged a community business after the termination of the community.

## DISCUSSION

*Standard of Review*

> Appellate courts review trial court findings of fact under the manifest error, clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Unless the trial court committed manifest error or was clearly wrong in its findings of fact, those findings will not be disturbed on appeal. *Aymond v. Aymond*, 99-1372 (La.App. 3 Cir. 3/1/00), 758 So.2d 886 . . . .

> > Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. *Phoenix Assur. Co. v. Shell Oil Co.*, 611 So.2d 709 (La.App. 4 Cir.1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. *Kem Search, Inc., v. Sheffield*, 434 So.2d 1067 (La.1983).

> *Ducote v. City of Alexandria*, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118, 1120.

*Young v. Young*, 06-77, pp. 3-4 (La.App. 3 Cir. 5/31/06), 931 So.2d 541, 544.

Where an error of law skews the trial court's findings of fact or causes the court to pretermit other issues, the appellate court must make a *de novo* review of the record, apply the correct law, and render judgment, if possible. However, if the trial court's error of law does not interdict the fact finding process, *de novo* review is not necessary. *C.R.W. v. State, Dept. of Soc. Servs.*, 05-1044 (La.App. 1 Cir. 9/1/06), 943 So.2d 471, *writ denied*, 06-2386 (La. 12/21/06), 944 So.2d 1289.

4

"A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard. *See Kline v. Kline*, 98-1206, p. 4 (La.App. 3 Cir. 2/10/99), 741 So.2d 670, 672." *Corkern v. Corkern*, 05-2297, p. 10 (La.App. 1 Cir. 11/3/06), 950 So.2d 780, 787, *writ denied*, 06-2844 (La. 02/02/07), 948 So. 2d 1083.

*Private and Social Security Disability Benefits and Settlement*

Patricia argues that the trial court erred in failing to find that Michael's social security disability benefits, those benefits he received from private disability insurance, and a lump sum settlement from his private disability insurer, received between February 1997 and April 3, 1998, were commingled with community funds to such an extent as to make them community.

> The mere mixing of separate funds and community funds in a bank account does not alone convert the entire account into community property. *Sharp v. Sharp*, 01-0969 (La.App. 4th Cir.10/2/02), 830 So.2d 328, 330, *writ denied*, 02-3250 (La.3/14/03), 839 So.2d 45. However, when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds all the funds are characterized as community. *Id.* The burden of proof is on the party claiming the reimbursement to show that separate funds existed and that those funds were used for the use or benefit of the community. *Id.*

*Gill v. Gill*, 39,406, p. 24 (La.App. 2 Cir. 3/9/05), 895 So.2d 807, 820.

The trial court explained its determination with regard to the commingling of the monthly private and social security disability benefits, as follows:

> The Court finds that Mr. Glass has proven, by a preponderance of the evidence, that these funds were used for community obligations or to benefit the community. Michael Glass testified that the parties used account number 3883 as their primary bank account out of which they paid their day to day living expenses. Mr. Glass also introduced bank statements and photocopies of checks which show how the money in account number 3883 was spent. While it is true that community funds were also deposited into this account, there is a "presumption that withdrawals from an account into which community and separate funds

5

are commingled are presumed to come first from separate funds." *Reinhardt v. Reinhardt*, 31,174 (La. App. 2d Cir. 1/20/99) 728 So.2d 503. Therefore, because Michael Glass adequately traced these funds going into the account and adequately proved what the funds in this account were spent on the Court awards Mr. Glass reimbursement . . . .

Additionally, Michael received a settlement from his private disability insurer of $355,000.00 in June 1998. The record shows that this money was initially deposited into the account from which community expenses were paid. Three certificates of deposit in the amount of $100,000.00 each were purchased with a portion of the funds. The remaining $55,000.00 was left in the account. The trial court applied the presumption that separate funds are the first to be withdrawn and concluded that the funds were used to pay community obligations or to otherwise benefit the community.

Patricia argues that only $185,468.57 of the remaining $300,000.00 can be traced. The trial court found, and the parties agree, that CDs purchased with these funds were pledged to secure a line of credit with Hibernia Bank in the amount of $295,000.00. The CDs matured in 1999 with each yielding $103,679. 97. A part of the proceeds of one CD was used to pay off the balance due on the Hibernia line of credit in the amount of $69,930.03. The parties agree that Michael is entitled to reimbursement of one-half of that amount. The remainder of the first CD, $33,748.94, and the $103,679. 97 proceeds of the second CD, were deposited into Patricia's Hibernia account. Of this amount, it is clear that only $130,068.97 represents Michael's separate funds, the interest of $3,679.94 earned on each of the CD's being community funds. La.Civ.Code art. 2339.

The trial court found that Michael had shown that a check to him from this account in the amount of $13,000.00 was used for community expenses.

6

Additionally, the parties agree that $100,803.64 was written from this account to pay for community real estate. The remainder was unaccounted for and thus must be considered to have been commingled with the community funds.

The proceeds of the third CD were deposited into an account in Red River Bank, then transferred into another account in Michael's name. Of this amount, the parties agreed that $15,538.57 was spent on community real estate. The trial court found that Michael established that an additional $2,000.00 was deposited into the community account and used for community expenses. Michael testified that he loaned $37,000.00 from the proceeds of the CD to his former sister-in-law. The court found that the documentary evidence sufficiently established that these funds were deposited into the community account when repaid. However, it found that the evidence established community use of only $25,530.87 of the funds.

The trial court additionally found that although Michael spent $2,800.00 to improve his separate property and $4,380.00 to generate community income from his separate rental property, he is entitled to reimbursement because the expenditures resulted in a benefit to the community by increasing the rental value of the property. We can find no authority which would allow reimbursement of a spouse for separate funds expended on separate property. Even if the law so provided, the record does not contain evidence of the rental value of the property either before or after the improvements. Therefore, there can be no reimbursement of this expenditure.

Michael seems to argue that he is owed reimbursement for one-half of the entirety of the funds received from the private and social security disability benefits and settlement, except those amounts he admitted were expended on separate debts. He seems to be arguing that application of the presumption that all debts incurred

7

during the marriage are community would mean that anything the money was spent for was a community debt unless proven otherwise. However, since these funds were put into accounts containing community funds, the burden was on Michael to trace the use of the funds. Funds not traced become community by commingling. *See Gill,* 895 So.2d 807.

Michael also disputes several instances in which the trial court found that he had not adequately traced funds for which he claims that a reimbursement is due. He asserts that he loaned $14,000.00 from these separate funds to family friends, the Stevensons, and that, upon repayment, the funds were deposited in the community account and used for community debts. The trial court found as follows:

> On March 8, 1999 Michael Glass transferred $14,000.00 out of account number 4216 into account number 3883. He then loaned this money to friends of the family, the Stevenson's. Mr. Glass testified that the Stevenson's paid the loan back in full and that he deposited the money back into account number 3883. However, Mr. Glass testified that once the loan was repaid he was not sure if the funds were spent on community debts or his separate debts. After reviewing the evidence the court is in no better position to determine where these funds were spent. Therefore, the Court finds that Michael Glass has not adequately traced these funds and denies his reimbursement claim as to the $14,0000.00.

Michael now argues that the money could only have been spent on community obligations.

Michael further contends that the trial court erred in denying reimbursement for a payment of $10,000.00 from his separate funds on September 3, 1999, to fund his law practice. Michael asserts that although his law practice is his separate property, income from the practice benefits the community. Therefore, he argues that he should get a reimbursement from the community of his separate funds. The trial court found that:

8

On September 3, 1999 Michael Glass transferred $10,000.00 form account number 4216 to Legal Source, Inc., his separately owned business. Mr. Glass testified that these loans were returned to him either as repayment of a loan or as salary. He testified that at the end of each year, he paid himself a bonus from the corporation and that this bonus payment essentially withdrew all funds remaining in the corporation's operating account. Michael Glass also testified that he would have used these funds to pay either community debts or his separate debts. Mr. Glass has not introduced any further evidence to show the Court where those funds were spent. Therefore, the Court denies Michael Glass's reimbursement claim on this issue.

Michael's argument now is that those funds were taken back out of the law practice and were spent in ways that benefitted the community.

After reviewing the testimony of record, we find that the record supplies sufficient support for the trial court's conclusion that these funds were not sufficiently traced. We find no manifest error and decline to overturn the trial court's determination in this regard.

Michael also asserts that the trial court erred in denying reimbursement for a $10,000.00 payment to MBNA which Michael asserts was used to pay community credit card debt. The trial court found:

[Exhibit] P-21 shows a withdrawal of $10,000.00 from account number 3883 on September 9, 1999 but lists the payee as "unknown." Mr. Glass testified that these funds were used to pay off the couple's MBNA credit card, but offers no supporting proof. There was also a $12.50 wire transfer fee related to this $10,000.00.

After reviewing the record, we find that Michael produced documentary evidence showing that this payment was an electronic payment on an MBNA credit card account. Therefore, we find that Michael is entitled to reimbursement in connection with this payment.

With the exception of the $4,380.00 expenditure for separate rental property, and the $10,000.00 credit card payment, we find that the trial court's conclusions with

9

regard to the private and social security disability benefits and settlement are correct and supported by the record.

*Patricia's Inheritance*

Patricia asserts that the trial court erred finding that $57,398.00 of her inheritance from her father was used to pay community obligations. She argues that the court should have enforced an agreement between the parties that the funds inherited by her would be used to pay Michael's separate debt.

The documentary evidence is as follows. Patricia liquidated an account containing $57,398.00 inherited from her father on January 7, 2003. She gave the money to Michael via check dated January 16, 2003. On January 17, 2003, he paid off his separate debt via wire transfer. On January 28, 2003, he deposited Patricia's $57,398.00 check into the community checking account. He admitted at the hearing that he told her the money would be used, along with other funds, to pay his separate debt. The trial court, in its written reasons, stated that:

> After reviewing the evidence and the testimony of the parties the Court does not find any intent on the part of Michael Glass to defraud Patricia Glass out of her inheritance. The parties were married at the time she gave Mr. Glass the money to pay off the mortgage. Furthermore, Mr. Glass testified that while he may not have used these funds to pay off the mortgage they were used to pay other community obligations and debts of the parties. Michael Glass testified that these funds were deposited into account No. 3883 which the Court has previously found was the parties' account from which they paid their day to day living expenses. The Court finds Michael Glass's testimony credible on this matter and does not find any ill intent on the part of him in regards to these funds. Therefore, the Court awards Patricia Glass reimbursement in the amount of one-half of the $57,398.00 . . . .

The testimony is undisputed that it was the intent of the parties that the money derived from Patricia's inheritance was to be used to pay some of Michael's separate debt. It also appears that both parties thought that this was what had occurred until

10

Michael examined the exact sequence of events and he began to assert that Patricia's inheritance had been used to pay community debts. Further, Patricia wrote the check before the payment was made. Although he did not deposit the check until after he made the payment, he was in possession of the check and controlled the date of deposit. Therefore, we find that the court erred in finding that Patricia's inherited money paid community debts rather than Michael's separate debt. Accordingly, we find that Michael must reimburse Patricia the full amount of her separate funds used to pay his separate debt.

*Donations to Benjamin Glass Trust*

Patricia next asserts that the court erred in failing to award her a reimbursement for community funds donated to a trust for the benefit of Michael's minor son from a previous marriage. These amounts include funds donated to the trust and an insurance policy purchased with community funds with the Benjamin Michael Glass Trust designated owner and beneficiary. Michael admits that between $50,000.00 and $70,000.00 in community funds were donated to his son's trust during his marriage to Patricia. He further does not dispute that the life insurance policy was bought with community funds. Michael argues that both should be considered usual or customary gifts and, therefore, not reimbursable.

La.Civ.Code art. 2349 provides that "[t]he donation of community property to a third person requires the concurrence of the spouses, but a spouse acting alone may make a usual or customary gift of a value commensurate with the economic position of the spouses at the time of the donation." Patricia argues that she did not concur in these contributions or in the purchase of the insurance policy and did not benefit from them. The trial court found that the amounts donated to the trust and the cost of the

11

insurance policy were commensurate with the economic position of the parties at the time of the donations and were, therefore, usual and customary gifts. Given the evidence regarding the income and lifestyle of the couple during their marriage, we find no error in this conclusion by the trial court.

*Community Funds Used to Improve Michael's Separate Property*

Patricia argues that the trial court erred in failing to award full reimbursement for community funds used to improve Michael's separate rental property. She claims reimbursement of one-half of $15,000.00 in community funds spent on Michael's separate residence which was used as the family home and of $21,978.00 in community funds spent on his separately owned law office. The court reduced the amount to be reimbursed to Mrs. Glass for community funds spent on these two properties by fifty percent finding that Mrs. Glass received a benefit from the improvements to the buildings in that the home was renovated for her use, and that she received a benefit from the improvement to the law office in the form of enhanced rental value.

After reviewing the record herein, we find that no evidence was adduced as to the value of any of the properties before or after the renovations. Testimony was adduced as to the amount of rent which was paid to the community for the law office after the renovations, but no evidence was adduced as to the amount the property would have rented for before the renovations. Further, no evidence was adduced as to the value of the use of the home by Michael and Patricia. In the absence of such evidence, we find that no basis exists on which to reduce the reimbursement due Patricia under La.Civ.Code art. 2366.

12

Patricia also claims a reimbursement for $13,175.57 in community funds spent on several other rental properties owned by Michael separately. Michael does not dispute this claim, but only asserts that the amount should be reduced by $2,302.57 spent on a new air conditioning unit. He argues that without this expenditure, the property could not have been rented, and the community would not have received the rental income. However, no evidence was submitted to support this claim. Patricia is entitled to receive a reimbursement in connection with this expenditure of community funds.

*MBNA Payment*

Patricia further argues that the trial court erred in giving Michael a reimbursement for a $20,000.00 check bearing number 778 drawn from the proceeds of the CDs purchased with the disability settlement which the trial court found was used to pay off a community credit card debt with MBNA. She asserts that the money was used to open a money market account rather than to pay a credit card. At trial, Michael's testimony was that a payment to MBNA must be a payment of a community credit card debt. Patricia, on the other hand, introduced into evidence a copy of check number 778 made out to MBNA America dated February 25, 1999, and a statement from MBNA showing that an AOPA Goldsavers money market account was opened on March 5, 1999, with a deposit of $20,000.00. Given this evidence, we find that the court erred in concluding that the payment was a payment of a community debt with Michael's separate funds. Therefore, Michael is not due reimbursement for this amount.

*Forever Flying*

Patricia asserts that the trial court erred in determining the amount of income generated after the termination of the community by Forever Flying, a community owned airplane rental and teaching business. She argues that the trial court should have reduced the amount of income by the amount of personal service income she earned giving flying lessons. The trial court found that:

> After reviewing the evidence submitted on this issue, the Court finds that D-50 does show $23,300.00 in draws post termination, but it also shows that Patricia deposited $9,290.48 in cash. Mr. Glass claims that these funds were generated by the community business and kept off the books by Mrs. Glass. Patricia Glass asserts that these were her separate funds. Neither party has introduced any evidence to prove the origin or source of these funds. Michael Glass argues that Patricia Glass's testimony is not credible and therefore he should be reimbursed for one-half of the $9,290.48. Although Mrs. Glass did admit to not being truthful in the parties support suit before Judge Foote, the Court does not find that this creates a presumption per se that her testimony in this matter is un-credible. Furthermore, Michael Glass has not provided the Court with any evidence that these funds were generated by the community business and were not Patricia Glass's separate funds. Therefore, the Court finds that Michael Glass is due reimbursement for one-half of the $23,300.00 less the $9,290.48 or $7,004.76.

Michael now argues that the court erred in treating the $9,290.48 as Patricia's separate money. However, no evidence was presented that the $9,290.48 was generated prior to the divorce. The money was deposited into the Forever Flying account after the divorce. Therefore, there is no presumption that the money was community.

Patricia argues that the money she drew out of the account is somehow separate from the rest of the business income. However, she presented no evidence other than her own testimony to support this conclusion or to suggest why the money from flying lessons should be treated differently from the money generated by the aircraft rentals. It is undisputed that Forever Flying was a community business. Reviewing

14

the trial court's determination under the manifest error standard of review, we cannot say that the trial court erred in reaching this conclusion.

Michael asserts that the court erred in denying his claim that Patricia mismanaged Forever Flying in violation of La.Civ.Code art. 2369.3. He argues that he is entitled to damages under La.Civ.Code art. 2354.

After reviewing the record, we find inadequate support for this claim. The business made little or no profit from its inception. Michael claims that Patricia unilaterally shut down the business when it was making more money than ever. However, the record does not support the conclusion either that she shut the business down without reason or that the business had become profitable for the long term. Therefore, we find no error in the trial court's rejection of the claim for mismanagement of this community asset.

*Separate Funds at Marriage*

Patricia asserts that the trial court erred in finding that Michael had $9,364.69 in separate funds at the time of the marriage.

The trial court, in its written reasons for judgment, found as follows:

> Michael Glass claims that when the parties were married on February 1, 1997 that he had on deposit $9,364.69 in separate funds in bank account numbers 3883, 4216, and 7584. However, Mr. Glass failed to introduce any bank records which show the balance of these accounts on February 1, 1997. The account summary for account number 4216 begins on February 6, 1997 and shows a beginning balance of $2,517.30. The account summary for account number 3883 begins on February 22, 1997 and shows a beginning balance of $6,133.69. The account summary for account number 7584 begins on February 22, 1997 and shows a beginning balance of $713.70. (P-9) The court has no further evidence as to this issue except for the testimony of Michael Glass.
>
> The court believes that Michael Glass is entitled to reimbursement for the funds in accounts 4216, 3883, and 7584 even though the statements do not list the balances as of February 1, 1997. The Court is

15

of the opinion that each of these bank statements are close enough to the date of marriage to sufficiently establish the amount Michael Glass had in these accounts at the time of marriage. Furthermore, the Court has no evidence or testimony from Patricia Glass refuting any of these amounts. Therefore, the Court finds that Michael Glass is entitled to reimbursement of one-half of the funds on deposit at the time of marriage being $4,680.00.

Patricia argues that in the absence of bank records showing the balance on the date of marriage, the trial court should not have found that Michael had the funds in accounts 3883 and 7584 on the date of the marriage. Further she argues that the funds in account 4216 were indiscriminately commingled with funds added to the account after the marriage. However, in the absence of testimony from Patricia contesting the amount of funds held by Michael on the date of the marriage, the bank statements, in addition to Michael's testimony in this regard, constitute a sufficient factual basis for the trial court's conclusion that Michael had $9,364.69 at the time of the marriage.

*Patricia's Payment of Community Credit Card Debt*

Patricia next asserts that the trial court erred in failing to award her a reimbursement of $7,105.50 she paid on a community credit card after the termination of the community. The trial court found that the payment was made from community funds. We find no error in this conclusion. The payment was made by a check on the Forever Flying account, which, as has been stated, was a community owned business. However, Patricia asserts that this payment was also shown as a draw by her on the Forever Flying account. Therefore, she argues that she should be reimbursed for this payment or that the amount should be accounted for in determining the post-termination income of Forever Flying.

16

After reviewing the record, we find no evidence from which we can determine whether or not this amount was included in the amount shown as having been drawn from the business by Patricia. Therefore, we find that the trial court correctly concluded that no reimbursement was due in connection with this payment.

*Post-Hearing Rental Income*

Finally, Patricia asserts that since the date of the hearing Michael has failed to give her the net rental income from the two rental properties designated to her in the judgment. This matter is not covered in the judgment, has not been considered by the trial court, and is not before this court on appeal. Therefore, we will not consider this assignment of error.

*Sale of Michael's Separate Stock*

Michael contends that the trial court erred in denying him his full reimbursement for $78,988.50 in separate funds used to pay a community loan with Red River Bank. The trial court discussed this payment in its reasons for judgment as follows:

> The parties disagree on the amount of reimbursement Patricia Glass owes on Red River Bank Loan 8402. Michael Glass asserts that Patricia Glass owes him reimbursement in the amount of $39,494.00 for his payments on this loan. However, Mrs. Glass contends that she owes Mr. Glass only $34,068.00 for his payments. Mrs. Glass reasons that she does not owe reimbursement for interest paid post termination on the portion of this loan that was formerly a separate debt of Mr. Glass and unilaterally converted to a community loan by him. Furthermore, she argues that because this loan was paid from the property account, which contained rental income belonging to her that she does not owe reimbursement for the full one-half of all payments made.
>
> Michael Glass testified that some $38,000.00 was drawn from their community line of credit (Red River Bank Loan 8402) to pay off the mortgage on real estate that was Michael Glass's separate property. Our jurisprudence holds, if the payment of the loan benefits the community then the party seeking reimbursement is entitled to one-half of the principal amount paid but is not entitled to reimbursement for

17

interest paid. The courts have found these interest payments to be "no more than the cost of maintaining such natural and civil fruits which arise out of a spouses separate property but ultimately accrue to the community's use or benefit." *Munson v. Munson*, 00-348 (La. App. 3 Cir. 10/4/00) 772 So. 141 at 146. This Court is satisfied that the interest reimbursement Michael Glass is seeking here did benefit the community. Accordingly, the Court denies his reimbursement claim as to any interest and but (sic) awards him reimbursement for the amount attributable to principal being $34,068.00.

After reviewing the law and the evidence of record, we find no error in the trial court's conclusion in this regard.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered as follows. The reimbursement due Michael, considering the conclusions reached herein, is $252,150.30. The reimbursement due Patricia, considering the conclusions reached herein, is $343,682.99.

Costs of this appeal are to be divided equally between the parties.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.